LYMAN v. NORTHERN PAC. ELEVATOR CO. (CULLIFORD, Intervenor).

(Circuit Court, D. Minnesota. August 29, 1894.)

CONTRACTS OF CORPORATION—CONSTRUCTION.

An agreement under which the stockholders loan money to a corporation, which provides that each shall loan his pro rata share of $275,235 which the number of his shares bears to the total amount of shares, and that the company's notes, at 12 months, shall be issued for the loan, payable out of the first net earnings, limits the company's liability on the notes to the net earnings; and, where there are none, the stockholders, or those to whom they have indorsed the notes, cannot recover thereon from the company.

Action by David B. Lyman against the Northern Pacific Elevator Company. Thomas Culliford, holder of a note executed by defendant, intervenes, claiming the right to be placed on the footing of a general creditor, and as such to be entitled to share in future dividends. Claim disallowed.

John B. Sanborn, for intervenor.

Davis, Kellogg & Severance, for defendant Northern Pac. Elevator Co. and for M. J. Forbes, Receiver.

WILLIAMS, District Judge. This cause has been heard upon a motion by the intervenor for judgment upon the petition of intervention and answer. The following facts appear:

On or about August 15, 1890, the Northern Pacific Elevator Company was a corporation created under and by virtue of the laws of the state of Minnesota, owning a line of elevators through the states of Minnesota, North Dakota, Idaho, Washington, and Oregon; and being in need of money to carry on its business, and owing a large amount of money, the stockholders of the company made and entered into an agreement with each other whereby they subscribed for a loan to said company for $275,235, pro rata, according to the number of shares held by each, and signed an agreement, agreeing to take the company's note at 12 months, bearing 7 per cent. interest per annum. The agreement was in the following words and figures.

"Minneapolis, August 15th, 1890.

"The undersigned stockholders in the Northern Pacific Elevator Company hereby each agree to loan to said company our pro rata share of the sum of two hundred and seventy-five thousand two hundred and thirty-five dollars, which the number of shares held by each bears to the total number held by the signers thereof. The company's note, at twelve months, with interest at seven per cent. per annum, shall be issued for the loan, and paid out of the first net earnings of the company before dividend. Owners of ten thousand shares to subscribe to make this binding."

The said agreement was signed by all the stockholders making said loan, exceeding 10,000 shares. One of the stockholders so signing said agreement was L. Fletcher, and he received the company's note therefor, which was renewed, and which said original note and renewal note read as follows:

"1,996.74.               Minneapolis, Minn., Sept. 1st, 1892.

"One year after date, we promise to pay to the order of L. Fletcher nineteen hundred and ninety-six 74/100 dollars at our office in Minneapolis, Min-

nesota, in accordance with the terms of his subscription to the loan of Aug. 15, 1890, with interest at the rate of 7%, payable semiannually.

"[Signed]                                          Northern Pacific Elevator Company,
                                                        "By C. H. Graves, President."

The intervenor is the immediate indorsee of Fletcher.

It further appears that the company is insolvent, that there have been no net earnings, and that the debts exceed the property by several hundred thousand dollars. On this state of facts, I think the intervenor cannot recover.

At the date of the agreement of August 15, 1890, and of the note of which the one under present consideration is a renewal, the corporation, if not actually insolvent, was largely indebted, to liquidate which debts the need to raise money was imperative. Each stockholder, under the constitution of the state of Minnesota (article 10, § 3), was, as to this debt, liable to the amount of the stock held or owned by him. Accordingly, the stockholders and the corporation adopted the method of raising money above stated. In doing this they entered into the agreement of August 15, 1890, by which each one of the many stockholders signing that agreement agreed to take and cash the note of the company for an amount proportionate to the share of each stockholder in the corporation. The company was not in condition to pay this debt, and it is manifest that the stockholders wished to avoid being called upon for contribution in a summary manner. Accordingly, it was provided in the said agreement, to which the note under consideration, by its terms, refers, that the note should be paid out of the first net earnings of the company before dividend, and that owners of 10,000 shares should subscribe to make the agreement binding. The effect of this agreement was that even the net earnings could not be subjected to the payment of this liability for the period of one year after the date of the note. It is clear that the present petitioner, who is an immediate indorsee of the stockholder Fletcher, the payee of the note, is in no better position to assert this claim than Mr. Fletcher himself. I think it is very clear from the agreement and note, which must be read as one paper, that there is no liability of the company upon this note, except out of the net earnings, and that if net earnings have not been made it cannot be contended that the company is liable for the face of the note as absolutely as if there was no provision, either in the note or contract of August 15, 1890, respecting payment out of net earnings. Certainly, the clause was inserted for some purpose,—either to limit the liability or add to the security of the stockholder. It certainly does not add to his security, for, if no provision had been inserted when the note became due, not only the net earnings, but all the company's property, could have been applied to the payment of the note. It therefore limited the company's liability to the net earnings. If it was intended as a pledge of the net earnings as security, such language would have been used in the contract, but the contract does not provide that the net earnings are pledged as security, but rather limits the payment to the net earnings. The entire assets of this corporation are in the hands of a receiver of this court for distribution among creditors. Certain distributions have been made. The first was to per-

sons claiming that they had actual wheat in the elevators at the time when the receiver was appointed. The claim was conceded to these persons, and a distribution made to them. There was another distribution as to a certain number of alleged lien holders. Now, in the present case, the petitioner, who stands in the position of a stockholder, and is the assignee of a stockholder, appears with the note and contract under present consideration, which, as I have observed, constitute one agreement, and which were executed, given, and received for the purpose of raising money from the stockholders in order to clear off an indebtedness upon which each one of the stockholders would have been liable to pay under his obligation as a stockholder of the company, and which papers contain a provision that the payment shall be made out of a certain fund, which might or might not thereafter exist, and claims that he has a right to be put upon the footing of a general creditor, and as such entitled to share in future dividends. I think not. The very terms of the agreement are against this construction. I cannot allow this claim to participate in the distribution of the assets.