Argued September 26, decided October 14, rehearing denied December 30, 1913.

## PEASLEE *v.* GORDON FALLS ELECTRIC CO.

### (135 Pac. 521.)

**Appeal and Error—Review—Questions of Fact.**

1. In a case tried by the court without a jury, the findings of fact stand as the verdict of a jury and cannot be set aside by the Supreme Court unless it can say affirmatively that there is no legal evidence to support them.

**Evidence—Burden of Proof.**

2. Where the allegations of the complaint were denied by the answer, it was incumbent on plaintiff to make out a *prima facie* case as to each material fact.

**Indemnity—Extent of Liability.**

3. The treasurer of a corporation which planned to build certain factories and a town, but which had no money on hand, agreed with certain of the directors that bonds should be issued to raise money with which to carry out the plans; that he would finance the bond

issue, the surveying, advertising and everything connected therewith, and that he should be reimbursed therefor from the proceeds of the bonds to be sold, as such proceeds should come in. Under such contract, he made expenditures, but no bonds were issued or sold. *Held,* that, assuming that the contract was binding on the corporation, he was not entitled to reimbursement from the corporation, since the contract contemplated the creation of a special fund for his reimbursement, and he could look only to that fund.

From Multnomah: ROBERT G. MORROW, Judge.

This is an action by George L. Peaslee against the Gordon Falls Electric & Manufacturing Company. The facts are set forth in the opinion by Mr. Justice RAMSEY. Judgment for plaintiff and defendant appeals.                    REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Mr. M. H. Clark,* with an oral argument by *Mr. A. E. Clark.*

For respondent there was a brief over the names of *Mr. John B. Cleland* and *Mr. W. A. Cleland,* with an oral argument by *Mr. John B. Cleland.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

This action was begun by the plaintiff against the defendant to recover $2,695.07, as a balance which the plaintiff claims is due him from the defendant for money which he claims that he paid and expended for the defendant at its special instance and request, between the first day of July, 1908, and the first day of November, 1909, and in the payment of claims which had accrued against the defendant for services performed for it, and expenses incurred by it in and about its business in which it was engaged, between said dates. The complaint alleges that the plaintiff paid and expended for the defendant, at its special instance and request, in the aggregate $4,605.07, and admits.

payments thereon, amounting to $1,910, leaving a balance unpaid of $2,695.07, for which he demands judgment. The defendant answered, denying every allegation of the complaint, excepting that the defendant is a corporation. After all of the evidence for the plaintiff was in, the defendant filed a motion for a judgment of nonsuit, on the ground that the plaintiff had not produced sufficient evidence to prove the cause of action alleged in the complaint, or any cause of action. The court denied said motion. There was considerable evidence on each side. The court below made and filed its findings of fact and conclusions of law and found for the plaintiff.

1. The defendant, in its assignments of error, contends that the court below erred in overruling its motion for a judgment of nonsuit, and in each of its findings of fact, excepting the first, and its conclusions of law, claiming that neither of its findings of fact, excepting the first one, was supported by the evidence. The findings of fact stand as the verdict of a jury, and cannot be set aside, unless we can say affirmatively that there was no legal evidence to support them. The overruling of the motion for a judgment of nonsuit and the objections to the findings of fact raise substantially the same question.

2. There is not much conflict in the evidence on the material points. Every allegation of the complaint, excepting that the defendant is a corporation, was denied by the answer, and therefore it was incumbent on the plaintiff to make out a *prima facie* case as to each material fact.

3. The defendant was incorporated in July, 1908, with a capital stock of $225,000, all of which was subscribed. The plaintiff was a stockholder of the defendant, and held $42,500 of the stock during a part of the time, and only $100 at other times. He was, from the date of the organization of the defendant until

some time after he ceased paying money, as claimed in the complaint, a director and treasurer of the defendant. The evidence shows that the defendant, during the time that the plaintiff claims to have paid and expended the money sued for, had no money whatever. Charles Coopey, its largest stockholder, conveyed to the defendant a tract of 840 acres of land at Gordon Falls, about 30 miles east of Portland, on the Columbia River, and on the line of the Oregon Railroad and Navigation Company's railroad. It was planned to build woolen-mills and an excelsior factory on its premises at Gordon Falls, and to build a town there. The stockholders elected five directors, consisting of E. Y. Judd, George L. Peaslee, Charles Coopey, W. W. Peaslee, and O. E. Heintz. The board of directors elected E. Y. Judd, president, Chas. Coopey, vice-president, George L. Peaslee, treasurer, and S. B. Vincent, secretary, of the company. This board was elected July 22, 1908. The board of directors had their first meeting on July 22, 1908, and adjourned to meet again on July 25, 1908. They met on July 25, 1908, but never met again until *after* the time that the plaintiff claims to have paid and expended the money mentioned in the complaint. The directors never, *as a board,* in any manner authorized or requested the plaintiff to pay or expend any of the money for which he sues. They never, *as a board,* ratified the payment or expenditure of any part of said money. That matter was not considered at any meeting of the board until *after* the plaintiff claims to have paid and expended this money. The only members of the board that seem to have had anything to do with the payment or expenditure of said money were the plaintiff, his brother, and Charles Coopey. The latter claims to have been opposed to a portion of the expenditures. It is not claimed that the directors, *as a board,* authorized the payment or expenditure of any of said

money, or, *as a board,* authorized or approved the scheme for the bond issue. The evidence shows that the plaintiff was opposed to selling the treasury stock, and in favor of a bond issued to obtain funds to enable them to do what they had planned.

According to the evidence of the plaintiff and Charles Coopey, it was agreed between the plaintiff, Chas. Coopey and William Peaslee, all directors of the defendant, that the defendant should issue and sell bonds to raise money with which to carry out their plans, and that the payment of the bonds should be secured by a deed of trust upon the defendant's property, and that with every bond sold a stated amount of the capital stock of the company should be issued to the purchaser. This was agreed upon by these parties, and at the same time it was agreed by these parties that the plaintiff should finance this bond issue, and the surveying and the advertising, and everything connected therewith, and pay for the same, and that he should be reimbursed therefor from the proceeds of the bonds to be sold, as such proceeds should come in. The plaintiff testified that such was the contract, and that there was no other contract, and that he was to have the money to reimburse him as it came in from the sale of the bonds. The evidence shows that the plaintiff paid the money, and made the expenditures pleaded in the complaint under said contract, and under no other. The scheme was advertised in the public press and in various other ways, and the plaintiff seems to have expended the money in an effort to "boom" the townsite and to float the bonds, but no bonds were issued or sold. There seems to have been a defect in the title to a part of the defendant's land, and this may have had some effect in preventing the sale of the bonds. At any rate, no bonds were issued or sold. Solicitors were sent out by the plaintiff to sell the bonds, and

they obtained subscriptions for some of the proposed issue, and the subscribers made payments on their subscriptions, aggregating $1,910. This money was paid to the plaintiff, and, under the terms of said contract for his reimbursement, he retained such money, and credited it on his account for money paid and expended, leaving still owing, as he claims, a balance of $2,695.07, the amount for which he obtained a judgment.

We do not find it necessary to examine the items of the plaintiff's account, and we do not express an opinion as to whether all of them were proper expenditures, as the view that we take of the facts and the law renders it unnecessary to go into the various items. Nor do we find it necessary to decide whether the contract with the plaintiff was binding on the defendant.

According to all the evidence bearing on that point, the plaintiff agreed that he would finance the scheme that he and Coopey and William Peaslee had agreed upon, and attend to the sale of the bonds, and reimburse himself for all of his expenditures from the proceeds of the sales of the bonds. As stated, *supra,* he received on subscriptions for bonds that were never issued, $1,910, and credited it on his account for expenditures. The evidence shows that the defendant has had to repay the persons who paid said sums to the plaintiff on said subscriptions the amounts by them so paid.

The question for decision is, Was the plaintiff entitled to the judgment which he obtained for the money, which he claims to have expended, under the evidence as to said contract? We assume for the purposes of this decision that he and Mr. Coopey have stated the terms of the contract correctly, and that he was to finance and manage the scheme for the issue and sale of the bonds and for the surveying and other

improvements which were made, and pay the expenses thereof, and reimburse himself from the proceeds of the sales of the bonds as they should come into his hands. If enough bonds had been sold to cover the amount of his expenditures, he would have been entitled to reimburse himself from the funds received therefrom, as the contract expressly authorized him to do so, but no bonds were sold, and, according to the contract, he was not entitled to reimbursement.

In *Lyman* v. *Northern Pacific Elevator Co.* (C. C.), 62 Fed. 891, the facts were that under a stockholders' loan to a corporation, it was provided that each loan to the company his *pro rata* share of $275,235 which the number of his shares bore to the total amount of shares, and that the company's notes at 12 months should be issued for the loan, *payable out of the first net earnings of the company,* and the court held that the notes were payable *out of the net earnings,* and if there were no net earnings, there could be no recovery. Referring to said contract, the United States Circuit Court says: "I think it is very clear from the agreement and note, which must be read as one paper, that there is no liability of the company upon this note, *except out of the net earnings,* and that if net earnings had not been made, it cannot be contended that the company is liable for the face of the note as absolutely as if there was no provision, either in the note or contract of August 15, 1890, respecting payment out of net earnings. Certainly, the clause was inserted for some purpose—either to limit the liability or add to the security of the stockholders. It certainly does not add to his security; for, if no provision had been inserted when the note became due, not only the net earnings, but all the company's property, could have been applied to the payment of the note. It, therefore, limited the company's liability to the net earnings."

In the case of *Lorillard* v. *Silver,* 36 N. Y. 578, the facts were that land was sold for a specific sum, with the condition that if the buyer sold the land for a certain other sum and realized the same, then $500 more should be paid to the seller, and the court held that the right to the further sum did not accrue when an offer had been made to the seller of the required sum, and refused by him, but only in the event of *an actual sale and realization of the proceeds.* In that case, the court said *inter alia:* "To 'realize,' means to bring into actual possession. It is ordinarily used in contrast to hope, or anticipation. * * In the present case he had an offer of $4,500, which he did not accept. He may have erred greatly in not accepting this offer He may have lost the opportunity thereby to secure to himself an advance of $1,000, and to the plaintiff an advance of $500. It cannot, however, be said that he has 'sold the land' and 'realized' over $3,000. He still holds the land, and, as all parties admit, has received nothing upon its sale. If the contract had used language importing an obligation to sell on his part, or to use diligence to effect a sale, or to exercise his judgment when an offer to sell should be made, a different question would *in each event* have been presented. The present contract, however, plants the defendant upon the naked ground of 'selling the land.' and 'realizing' a specified amount. This state of things has never been reached."

In *Eaton* v. *Richeri,* 83 Cal. 185 (23 Pac. 286), the facts were, that the defendant agreed to pay the plaintiff for services $3 per day, and it was also agreed that such payment could be made in provisions and supplies, "and, for any balance that might be due, the plaintiff was to wait until certain mining property was sold, or until a sum sufficient to pay the plaintiff said balance was realized from said mine." The plaintiff performed services for the defendant until,

after deducting all credits, there was a balance of $1,400 due him. After the services ceased, the defendant made a contract for the sale of the mine, and received $5,000 on the purchase price, but had made no deed to the purchaser. In said case the court said: "In our opinion the time of payment arrived *when the contract of sale was made and the $5,000 paid on account of the purchase money.*"

In *Congdon* v. *Chapman,* 63 Cal. 359, the court says: "The plaintiff sold to the defendant certain shares of the capital stock of the Erie Consolidated Mining Company, upon defendant's agreement to pay for the stock, at a stated rate per share, *from the first money which can be realized from the sale of any stock of said company* owned or controlled by him (Chapman); * * and said Chapman agrees to use all reasonable efforts to realize on the stock of said company owned or controlled by him without unnecessary delay, to the end that said payment may be made to said Congdon. By this agreement the parties clearly expressed their intention that the stock should be paid for *out of the first moneys that could be realized from the sale of any stock of the company* owned or controlled by Chapman, the latter further agreeing to use all reasonable efforts to realize on the stock without unnecessary delay, 'to the end, that said payment may be made to said Congdon.' At the trial the court below found that the defendant·used reasonable * * efforts to sell the stock, but had been unable to sell any of it. Under such circumstances, to hold the defendant liable in this form of action would be to make and enforce between the parties a contract essentially different from the contract that they themselves made, and from that declared on."

In *Murray* v. *Baker,* 6 Hun (N. Y.), 264, the facts were that the plaintiff did certain flagging for the defendant in front of eight houses erected by the defend-

ant, under an agreement by which the plaintiff agreed to wait payment until the defendant should sell some of the houses *for cash,* and then, when thus sold, the defendant was to be paid. The defendant had sold two of the houses for *soap* and another for *jewelry,* and still owned the others. The court held that the plaintiff could not recover. Passing on the case, the court says: "The contingency, on the happening of which the plaintiff was to be paid, seems to be in the nature of a condition precedent, and however ill-judged or foolish it may have been on the part of plaintiff to agree to such a condition, it cannot be abrogated by the court, nor can the contract be changed. * * So the contract in this case places the defendant on the naked ground of a sale, 'for cash,' and upon the testimony and findings this contingency not only has not happened, but the defendant has been unable to effect a sale of any of the houses for cash, although it appears two of the houses have been sold for *soap,* and one for mock *jewelry,* leaving five of the houses still unsold. The bargain made by the plaintiff may have been improvident. For this he has only his own incautiousness to blame."

In *Smith* v. *Ross,* 51 Mich. 116 (16 N. W. 258), the facts were that the defendants agreed, upon the completion of certain work and acceptance by the architect, to pay Degaw the sum of $200, when he presents an order from the painter, *the money to be paid when Ross & Spaulding get the last payment upon the contract,* for building houses. The buildings were accepted by the architect, and, if the contract had been performed, the land owner was bound to pay. However, he refused to pay, and on defendants suing him, tied up the case in chancery, and they did not get their pay until *after* this case was commenced. Campbell, J., says: "The court (below) put the case to the jury that unless defendants used diligence to collect the

debt from Dinan, they were liable for principal and interest from such time as it might have been collected. This was an action on the common counts entirely. The parties seem to make no questions as to Smith being entitled to the money, and put the case on the other questions. And the defendants insist that, inasmuch as the suit is for the price or value, and there is no averment of negligence or failure on the part of the defendants to do their duty, there is no ground of recovery strictly at all, and none to recover interest or costs; the principal being now arranged. We think the defense is correct. A suit on the terms of the contract only entitled the party to be paid when defendants were paid.''

In the case of *Jackson* v. *Phillips County,* 25 Ark. 64, the facts were that Jackson, the plaintiff made a contract with Phillips County, whereby he was to make plats of the county, and mark on said plats the lands previously assessed, and thereby find the lands not assessed, and by the contract, *he was to have as compensation, one half of the amount of the taxes that should be collected* on the lands then placed on the tax books and not theretofore assessed. In this case, the court says: ''The proposal made by Jackson to the County Court, and which was accepted, was that Jackson was to receive for his services one half of the money collected off of the lands which he might ascertain to have been omitted in the late assessments of the county taxes; and this right to compensation depended upon the performance of his contract, by ascertaining the omitted lands and bringing them upon the assessor's list, and that money had been received in payment of taxes on the lands so ascertained and assessed. Then, and not until then, would he have a right to claim of the county one half of the money collected, because his contract was conditional, and his

right to compensation depended upon his performance of his contract, *and the collection of the money.*"

In *Breaux* v. *Lauve*, 24 La. Ann. 179, the facts were that Thomas Mille and Lauve & McCall entered into an agreement for the purpose of buying public lands on speculation, on equal shares.   Mille furnished the funds for the business, and after the lands had been purchased, Lauve & McCall executed to Mille, a contract acknowledging that they were indebted to Mille, on account of the funds so furnished in the sum of $7,752.54, and interest, and agreed that Mille should be reimbursed for the said sum *as the lands entered and purchased are sold or otherwise disposed of.* Mille died, and said action was instituted by his representatives.   The court, in deciding said cause, says : "It is argued on the part of the plaintiffs that the action on the obligation (referred to *supra*) is not prescribed, as the term for its performance has not arrived.   The $7,752.54 are to be paid proportionally as the lands entered and purchased are sold, or otherwise disposed of ; and the lands remain unsold, and have not been otherwise disposed of.   The recovery of the sum specified out of the proceeds of the lands when sold, the plaintiffs contend, is incidental to the parti· tion, and the action or partition is not prescribed. We think the case is with the plaintiffs.   The obligation is clearly one contracted on a suspensive condition depending on a future event which has not yet taken place, viz., the sum expressed is to be paid proportionally as the lands * * are sold.   It is not shown that any of the lands acquired by the parties under their agreement were ever sold.''

In the case of *Snell* v. *Cheney,* 88 Ill. 260, the court says : "The contract of Snell, Taylor & Co. to pay the debts of the railroad company cannot be regarded as an absolute agreement to pay, but it was a contract *to pay from the proceeds of a specified fund—from the*

*proceeds of the first township and county bonds* which might be issued in payment of subscription of stock. Under this contract, before the plaintiff would be entitled to recover, it devolved upon him to prove that township or county bonds, as specified in the contract, had been issued and delivered to Snell, Taylor & Co. This he failed to do. The record does not show that they ever received a single bond, and as they were only bound to pay *from the proceeds of the bonds,* the evidence before the court was not sufficient to authorize the judgment."

In the case of *Clark* v. *White,* 59 Ind. 437, the facts were that the plaintiffs were to do certain excavations for a railroad track, and were to receive part of their compensation "from the collection in stock subscriptions, and the remainder was to be paid out of taxes voted by Washington township to the Anderson, Lebanon & St. Louis Railroad, as soon as said tax is collected and paid to said railroad company." Referring to an instruction given in said case, the court says: "This instruction does not correctly express the meaning of the written contract. It makes no reference to the stipulation contained in it that payment for the labor was to be made out of the subscription and tax mentioned by its terms, and is" therefore "erroneous. Its plain meaning is that, if the appellees had performed the work, they were entitled to their pay, whether any amount of the subscription or tax had been collected or not. This is not according to the terms of the contract under which they undertook to do the work."

In the case of *Arment* v. *Yamhill County,* 28 Or. 474 (43 Pac. 653), the facts were that the plaintiffs and the county entered into a contract whereby the plaintiffs undertook to furnish the county lists and plats for the purpose of ascertaining the lands in the county that had not been taxed, etc., and for their ser-

vices the county was to pay them $50, and in addition to that, they were to receive a part of the taxes to be levied on the land discovered by them, and not previously assessed, and the plaintiffs' part of the said taxes was to be paid from month to month as said taxes should be collected by the sheriff and placed to the credit of the plaintiffs. The taxes not having been collected, the plaintiffs sued the county. Concerning said contract, this court, *inter alia,* said: "We think a reasonable deduction to be drawn from all this is that the additional consideration (beyond the $50) which the plaintiffs were to receive was made contingent and conditional upon the sheriff making collection of the taxes named, which should constitute a fund to be set aside by the county for their benefit, and should be paid to them from month to month as collected. * * Here there is no present or absolute indebtedness; indeed, no debt aside from the $50 was contemplated, but provisions were made looking to the creation of a fund to be paid to plaintiffs as it accumulated, and to which they were to look solely for compensation, aside from the consideration first named in the contract (the $50)."

We have quoted from decisions at considerable length to indicate what the decision in this case should be.

In this case the defendant had no money whatever, and no assets excepting the land referred to, and some treasury stock. The plaintiff knew this. He was a stockholder in and an officer of the defendant and knew its condition.

The scheme referred to, *supra,* to "boom" the proposed woolen-mills and factory, and other contemplated improvements at Gordon Falls and to issue and sell the bonds, was a more or less uncertain venture. The plaintiff is shown to have had great faith in it.

68 Or.—17

He undertook to finance the floating and sale of the bonds and to pay out the money that he did expend on the express contract that he was to be reimbursed out of the proceeds of the bonds as they should be sold, and as the proceeds of the sale should come into his hands. If this contract was made with the defendant, it did not create an absolute debt against the defendant for these expenditures. The contract contemplated the creation of a special fund from the proceeds of the sales of the bonds for the reimbursement of the plaintiff, and he was to look to that for reimbursement. No bonds were sold, and nothing came into the fund out of which the plaintiff was to be paid, and hence nothing was owing him under the contract.

The evidence does not support the allegations of the complaint or the findings of the court below. We find that there was no evidence to sustain the plaintiff's cause of action, or to support the findings of the court below, and that the motion for a nonsuit should have been sustained.

The judgment of the court below is reversed, and the case remanded to the court below, with directions to sustain said motion for judgment of nonsuit, and to dismiss this action.    REVERSED WITH DIRECTIONS.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.