DU PONT v. GARDINER et al.

(Circuit Court of Appeals, Second Circuit.   December 12, 1916.)

No. 57.

1. INJUNCTION ⊛⇒26(6)—RIGHT TO ISSUANCE—ILLEGAL USE OF PROCESS.

An injunction may be issued to prevent an inequitable use of legal process, and so a court of equity will restrain an action at law, where defendant⋅has a defense in equity which he cannot urge in the action at law; but, if the defense may be urged to the action at law, an injuction is improper.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 35; Dec. Dig. ⊛⇒26(6).]

2. CONTRACTS ⊛⇒94(1)—FRAUD—SEALED INSTRUMENTS.

While at common law the defense of fraud could not be urged against an action on a sealed instrument, the rule was otherwise as to simple contracts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420, 428, 430, 1160; Dec. Dig. ⊛⇒94(1).]

3. EQUITY ⊛⇒153—PLEADINGS—CONSTRUCTION.

While pleadings are not construed in equity with so high a degree of technicality as at law, nevertheless, where allegations are equivocal, they will be construed most strongly against the pleader.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 386–389; Dec. Dig. ⊛⇒153.]

4. INJUNCTION ⊛⇒26(6)—RIGHT TO—DEENSES.

Complainant's bill, seeking to enjoin a suit against him on a contract, alleged that he was induced⋅to sign the contract solely upon representations that were false.  No demurrer was interposed, and the answer denied the allegations that the representations which furnished the basis for the contract were false.  An injunction was granted, and complainant sought to sustain it on appeal, upon the theory that there is a difference between false and fraudulent representations, and that where representations are merely false, and not fraudulent, relief can be had only in equity.  *Held* that, while the bill was ambiguous, yet as the representations, if false, must have been fraudulent, the injunction was improperly granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 35; Dec. Dig. ⊛⇒26(6).]

Appeal from the District Court of the United States for the Southern District of New York.

Bill by T. Coleman Du Pont against George N. Gardiner, upon his death revived against George N. Gardiner, Jr., and others, executors of defendant's last will and testament.  From a decree for complainant, defendants appeal.  Reversed and remanded, with directions to dismiss bill.

Kellogg & Rose, of New York City (L. Lafflin Kellogg and Alfred C. Pette, both of New York City, of counsel), for appellants.

Simpson, Thacher & Bartlett, of New York City (Julius F. Workum and Franklin P. Ferguson, both of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

⊛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge. The plaintiff has obtained an injunction restraining the defendants from prosecuting or taking any further proceedings in an action at law pending in the District Court of the United States for the Southern District of New York, in which they are plaintiffs and he is defendant. This suit was brought originally against George N. Gardiner, the defendants' testator. After the institution of the suit Mr. Gardiner died, and the present defendants were appointed executors under his last will and testament, and both the action, at law which has been restrained and the present suit were revived in their names as parties in his place and stead.

The action at law was commenced on May 14, 1913, in the Supreme Court of New York, but was removed into the District Court of the United States for the Southern District of New York on the ground of diversity of citizenship by Mr. Du Pont, defendant therein, who is a citizen of Delaware; Mr. Gardiner being at the time a citizen of New York. The action at law is brought upon a contract alleged to have been made between Gardiner and Du Pont whereby the latter promised to pay to the former, for services rendered and to be rendered in connection with what is referred to as "the Equitable Building deal in the city of New York," $100,000 in cash and $100,000 par value of the common stock of a company incorporated or in process of incorporation for the purchase and carrying out of said deal. It is alleged that the contract is evidenced by a letter reading as follows:

"August 9, 1912.

"Mr. T. Coleman Du Pont, Wilmington, Delaware—Dear Sir: Confirming my conversation with you and recording our understanding in connection with the Equitable Building deal, there is to be paid to Mr. George N. Gardiner a commission, for services rendered and to be rendered, of $100,000 cash and $100,000 par value of the common stock of the company, same to be contingent upon the final closing of the deal now in progress for the purchase of the Equitable site and the erection of a building thereon. The cash commission will be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company.

"Yours very truly, [Signed] Frank M. Andrews.

"Dear Frank: The above is just as I understand it, and provisions will be made to take care of this as early as possible.

. "[Signed] T. C. Du Pont."

Mr. Andrews, it appears, was the architect of the McAlpin Hotel in New York City, and he was endeavoring to promote a project for the acquisition of the site of the former building of the Equitable Life Assurance Society at 120 Broadway in New York City (which building had been burned down in January, 1912), and for the erection of a building thereon. Andrews also desired to become the architect of the new building. Du Pont had been interested with Andrews in the erection of the McAlpin Hotel, and his aid was sought in financing this new project for the erection of a new building for the Equitable. As other persons were necessary in carrying the scheme through, the services of Gardiner were enlisted.

Du Pont now claims that he signed the statement to which his signature is appended above because of the representations made to him by Andrews that Gardiner's services were valuable and that the matter

was "straight" and "all right"; and he asserts that the representations made by Andrews were false. He claims that at the time of signing the statement he knew nothing of what services, if any, had been rendered by Gardiner, and that he relied solely on the representations made by Andrews; the facts being peculiarly and solely within the knowledge of Andrews. He denies that Andrews was his agent, denies that Gardiner rendered any services for him (Du Pont), and in substance and effect denies that Gardiner had, in fact, any contract which entitles him to recover.

According to Mr. Andrews' testimony, Gardiner and Du Pont met at the office of Andrews, at which time matters were talked over and a suggestion was made by Du Pont that perhaps Gardiner would be willing to take his $200,000 in stock, to which the latter replied that he could not afford to take it all in stock, but that he would be willing to take one-half of it in stock, which Du Pont said was acceptable to him. After arranging with Gardiner, Du Pont turned to Andrews and, according to the latter's testimony, said:

" 'Frank, if you will embody this conversation and agreement in a letter, and forward it to me, I will put my acceptance on the letter and return it to you;' and turning to Gardiner said: 'Is that sufficient contract for you, Mr. Gardiner, or do you wish a formal contract?' to which Gardiner replied that the letter would be entirely satisfactory to him, and that he wished the matter to be given prompt attention, because he had been worrying Mr. Andrews for some time to have the matter put in final form, and with a clear understanding, to which request Mr. Du Pont answered that he was as anxious to have the matter off his mind as anybody, and that, if the letter were sent, he would attend to it immediately."

[1] At the opening of the case, and before any evidence was taken, the defendants moved to dismiss on the ground that the court as a court of equity had no jurisdiction to restrain the action at law by reason of any alleged fraud, because the contract relied on is not under seal, and a defense based on the fraud alleged could be interposed in the action at law. The court did not take that view of the matter, and the injunction issued. Did the court err?

Ever since the Earl of Oxford's Case, 1 Ch. Rep. 1, the general right of chancery to interfere by injunction for the purpose of preventing an inequitable use of legal process has been recognized in England; neither is it questioned in the United States. There can be no doubt that a court of equity can restrain an action at law in cases in which the defendant has a defense in equity which he cannot interpose in the law court. But the question presented is whether the alleged fraud used to induce Du Pont to enter into the agreement upon which the action at law is brought is purely an equitable defense, of which the party is not entitled to avail himself in the law court. If it is not, and the fraud can be shown in the action at law, the injunction was improvidently issued.

[2] At common law, in an action on a sealed instrument, fraud could not be set up as a defense, except fraud in the actual execution of the instrument. Hartshorn v. Day, 19 How. (U. S.) 222, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 570, 24 L. Ed. 232; Shampeau v. Connecticut River Lumber Co. (C. C.) 42 Fed. 760; Kosztelnik v. Bethle-

hem Iron Co. (C. C.) 91 Fed. 606. This court has recognized the principle in a number of cases. See Whitcomb v. Shultz, 223 Fed. 268, 275, 138 C. C. A. 510 (1915). And so have the courts of New York. See Jackson v. Hills, 8 Cow. (N. Y.) 290; Dorr v. Munsell, 13 Johns. (N. Y.) 430. In the case of an instrument under seal, it was necessary to resort to equity to cancel the instrument. Taylor v. King, 6 Munf. (Va.) 358, 366, 8 Am. Dec. 746. The principle is that the circumstances show a want of consideration, and in a court of law an instrument under seal could not be avoided on that ground. But in other cases fraud has always been a good defense in an action at law on the contract. Mead v. Bunn, 32 N. Y. 275; Jones v. Emery, 40 N. H. 348; Irving v. Thomas, 18 Mo. 418; Harran v. Klaus, 79 Wis. 383, 48 N. W. 479; Chieves v. Gary, 24 Grat. (Va.) 414. In Such v. Bank of State of New York (C. C.) 127 Fed. 450 (1904) Judge Wallace held that a receipt in full, in the nature of a release, but not under seal, could be avoided at law in a federal court for fraud inducing the settlement pursuant to which it was given, and that the maker was not entitled to resort to equity for its cancellation.

[3, 4] We have discussed the matter upon the theory that the representations alleged to have been false were in fact fraudulent. We are obliged so to regard them. The complainant simply stated in his bill that the representations were false. His allegation is that:

"Said representations were false, and in fact the said George N. Gardiner had not rendered any valuable services in connection with said deal. Said T. Coleman Du Pont was induced to sign said letter solely upon said representations, and would not have signed the same but for the said representations."

In the argument in this court it was contended that a distinction exists between false representations and fraudulent representations, and that where the representations are merely false, and not fraudulent, relief can only be had in equity. A false representation may be either innocent or fraudulent. An allegation in a bill that a representation is false is therefore equivocal. And while pleadings are not construed in equity with so high a degree of technicality as at law, still the rule nevertheless prevails, even in equity, that where allegations are equivocal they will be construed most strongly against the pleader. 16 Cyc. 238. So that, if false representations which are innocent are a good defense in equity, and not in law, and those which are fraudulent are a good defense both at law and in equity, and the complainant simply alleges that the allegations are false, the allegation would seem to be insufficient.

But no demurrer was interposed, and no motion was made to dismiss the bill. An answer was put in which denied the allegation that the representation was false, and the case went to a hearing. Testimony was heard, and the District Judge found that the statement made by Andrews to Du Pont, and which was alleged to have been "a false representation," was fraudulent. The court declares that Andrews' statement was "false, and false in such a way that it must have been fraudulent, although the nature of, or motive for, the fraud remains unknown." The District Judge has issued an injunction staying an ac-

tion at law because of a fraudulent representation, and his action in so doing cannot be sustained. If the representation was false, we have no doubt that it was fraudulent. The representation was of such a nature that it is hardly possible that it should have been made innocently, if false in fact. But, as fraudulent representations have always constituted a perfect defense at law to an action upon a contract not under seal, no necessity existed for the issuance of the injunction.

The attempt, therefore, to restrain the action at law by injunction must fail. No English court is to-day permitted to restrain an action by injunction. The right to do so was taken away by the Judicature Act of 1873, under the provisions of which equitable defenses may be interposed in any action. We have not overlooked the fact that the Congress of the United States in 1915 also passed an act which declares that in all actions at law equitable defenses may be interposed. Act March 3, 1915, c. 90, 38 Stat. 956. That act was, however, not in force when the bill of complaint was filed, which was in May, 1914. The case has been decided, therefore, without reference to it. The result, however, is the same as it would have been, had the statute been applicable.

The decree is reversed, and the injunction vacated, and the case remanded, with directions to dismiss the bill, with costs.

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes