GARDINER et al. v. DU PONT.

(Circuit Court of Appeals, Second Circuit. February 13, 1918. On Rehearing, March 11, 1918.)

No. 151.

1. CONTRACTS ⬤⇒61—VALIDITY—CONSIDERATION.
     A contract to pay for services "rendered and to be rendered" is not without consideration.

2. CONTRACTS ⬤⇒322(3)—ACTION FOR BREACH—SUFFICIENCY OF EVIDENCE.
     Evidence, consisting for the most part of correspondence between the parties, considered, and *held* insufficient to sustain an action against the defendant for breach of contract; it rather appearing that the contract was to be performed by a corporation to be formed, and in which both parties were interested.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by George N. Gardiner, Jr., Bentley Gardiner, and Mary Elsie Gardiner, as executors of the last will of George N. Gardiner, deceased, against T. Coleman Du Pont. Judgment of dismissal, and plaintiffs bring error. Modified and affirmed.

L. Laflin Kellogg and Alfred C. Pette, both of New York City, for plaintiffs in error.

Julius F. Workum and Leland B. Duer, both of New York City, for defendant in error.

Before WARD and ROGERS, Circuit Judges, and MANTON, District Judge.

MANTON, District Judge. Plaintiffs in error appeal from a judgment of dismissal at the end of the plaintiffs' case. The action is to recover $200,000 alleged to be due for breach of contract. On August 12, 1912, the Equitable Life Assurance Society of the United States, owner of a block of land situated on the east side of Broadway, bounded on the north by Cedar street, on the south by Pine street, and on the east by Nassau street, contracted for its sale to the defendant under certain conditions contained in an agreement of that date. Subsequently, a large office building was erected on this site by a company thereafter incorporated. It appears that prior to this date, the defendant was negotiating with Frank M. Andrews, an architect, for the organization of a corporation, which would take over the title to this property and erect a building thereon, and the agreement above referred to appears to be part of their plan, with this object in view.

On August 9, 1912, Andrews and Du Pont wrote as follows (Plaintiffs' Exhibit 1):

"Mr. T. Coleman Du Pont, Wilmington, Delaware—Dear Sir: Confirming my conversation with you and recording our understanding in connection with the Equitable Building deal, there is to be paid to Mr. George N. Gardiner a commission, for services rendered and to be rendered, of $100,000 cash and $100,000 par value of the common stock of the company, same to be contingent

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon the final closing of the deal now in progress for the purchase of the Equitable site and the erection of a building thereon. The cash commission will be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company.

"Yours very truly,                                    [Signed]   Frank M. Andrews.

"Dear Frank: The above is just as I understood it, and provision will be made to take care of this as early as possible.

"[Signed]   T. C. Du Pont."

It is upon this instrument that the plaintiffs claim the contractual obligation with the defendant, the alleged breach of which gives rise to this suit.

[1] The court below dismissed the complaint, assigning as a reason that the contract was unilateral, and that there was no consideration given which would support plaintiffs' right to recover. A dismissal on the merits for this, and lack of consideration, is not justified. If the contract was a personal obligation of Du Pont, there is sufficient consideration passing from the intestate of the plaintiffs in error, in the promise of "services rendered and to be rendered," to support the claim of the plaintiffs for a commission. Sykes v. Chadwick, 18 Wall. (85 U. S.) 141, 21 L. Ed. 824; Casserleigh v. Wood, 119 Fed. 308, 56 C. C. A. 212; Miller v. McKenzie, 95 N. Y. 575, 47 Am. Rep. 85. But we think the dismissal may be sustained for other reasons.

[2] In the letter of August 9th, it appears a conversation was had with defendant regarding their understanding with respect to the Equitable Building deal, one of the terms being that Gardiner was to be paid a commission of $100,000 cash and $100,000 par value of common stock for services rendered and to be rendered, and this to be contingent upon the closing of the deal in progress. Provision was made for the payment of the money, to wit, the cash commission to be paid out of the first moneys available from the sale of preferred stock and second mortgage bonds of the company. The memorandum signed by the defendant, "Provision will be made to take care of this as early as possible," does not indicate his intention to take care of it personally, but in some other way, at some later time. The $100,000 worth of stock to be paid must necessarily await the organization of the company and be paid as part of the promoter's compensation. That any payment to Gardiner was contingent to the deal going through seems apparent from the correspondence and intent of the parties. There is nothing to indicate that defendant was binding himself, or that the parties to the transaction believed he was binding himself. On October 9th, Gardiner wrote:

"15 William Street, New York, October 9, 1912.

"General T. Coleman Du Pont, 40 East 25th Street, New York—My Dear General: I am informed that the preferred stock of the New Equitable Building Company has been sold, and therefore it would seem that, in accordance with my agreement with Mr. Andrews and yourself, of August 9th last, my compensation for services rendered should now be taken care of. While, of course, I have every confidence that my agreement with you and Mr. Andrews will be carried out to the letter, I would greatly appreciate it if you will arrange to take care of this matter at the earliest possible moment. Will you kindly let me hear from you, and with kindest regards, believe me,

"Sincerely yours,                                    George N. Gardiner."

The language of this letter indicates that, the Equitable Building Company having been formed, Gardiner was looking for his compensation from the promoters, Andrews and Du Pont, and that to be paid out of the funds and stock resulting from such organization. Certainly the language of the letter of October 10th from the defendant to Gardiner indicates this, as do the letters of November 29th and 30th. The phrase in the letter of August 9th, "There is to be paid to George M. Gardiner a commission for services rendered and to be rendered," indicates other than a personal obligation to pay, "and the cash commission to be paid out of the first moneys available from the sale of preferred stock and second mortgage bonds of the company" is made payable, not out of funds of the defendant, or funds which might come to the defendant by reason of this deal, but out of future funds to come into the treasury of some company to be organized thereafter. The language is entirely foreign to the purpose of payment out of the pocket of the defendant, but indicates an intention to pay out of the treasury of the new company to be formed. When Gardiner was seeking payment of this obligation, he seems to have gone to Andrews for this purpose. This does not indicate that Gardiner deemed defendant personally liable. When the defendant in his letter of October 30th replied:

"Mr. Andrews told me that payments to you were to be made out of the first monies that came into hand of the company. The company has just made a call of 10 per cent. payable December 1 to 10 (I think), and the treasurer has been requested to take care of you out of the first funds received"

—Gardiner seems to have been satisfied, for he retained this letter without objection, and there is nothing in the record to indicate that Gardiner looked to anybody else but the treasury of the company to be taken care of.

We think that for this reason judgment of dismissal upon the merits should be sustained.

### On Rehearing.

PER CURIAM. The court below is directed to strike out from the judgment the words "upon the merits," to make it one of nonsuit only, and, as so modified, the judgment is affirmed, with costs.