## GARDINER et al. v. EQUITABLE OFFICE BLDG. CORPORATION.

(Circuit Court of Appeals, Second Circuit.   December 10, 1923.)

No. 102.

**1. Corporations ⟂448(1)—Commissions held not among expenses incurred for organization, payment of which was assumed by corporation.**

In a suit by executors against a corporation to recover commissions alleged to be owing by it to plaintiff's decedent, on an agreement whereby the corporation assumed payment of all expenses incurred or which might be incurred by the corporation's assignor in bringing about the incorporation of the company, *held*, that the company was not liable for the commissions as an assumed expense; assignor's promise to take care of such commissions being made with reference to the formation of an entirely different corporation, which, in fact, was never incorporated.

**2. Corporations ⟂448(1)—Letter to organizer of corporation, as agreed to by him, construed in respect to obligation to pay for services.**

Where the organizer of a contemplated corporation, in response to a letter confirming an understanding whereby a certain commission was to be paid to plaintiff's decedent for services in the purchase of realty and the erection of a building thereon, and stating that the commission "will be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company," replied that "provision will be made to take care of this as early as possible," *held*, that the language of the letter to the organizer, as agreed to by him, did not constitute the grant of security additional to the bare obligation to pay, but disclosed a condition precedent, the creation of the fund referred to, performance of which was necessary before liability arose under the terms of the letter.

**3. Corporations ⟂448(1)—No recovery of commissions under agreement with organizer, where promise to pay therefor was induced by false representations.**

Where the organizer of a corporation agreed to pay certain commissions for making a purchase of realty, because of statements made to him that the services of the person claiming the commissions were very valuable, and thereafter the organizer caused the corporation subsequently formed to assume expenses incurred by the organizer, *held*, in a suit by the agent's executors to recover the commissions, that there could be no recovery; the statements as to the value of decedent's services being false.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Bentley Gardiner and another, as sole acting executors of the will of George N. Gardiner, deceased, against the Equitable Office Building Corporation.   Decree for plaintiffs, and both parties appeal.   Reversed, with directions to dismiss.

Simpson, Thacher & Bartlett, of New York City (Julius F. Workum, Louis S. Weiss, and Charles H. Tuttle, all of New York City, of counsel), for defendant appellant.

Kellogg & Rose, of New York City (Abram J. Rose, Alfred C. Pette, and Asa B. Kellogg, all of New York City, of counsel), for respondents appellants.

Before ROGERS and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MANTON, Circuit Judge. This suit is in equity, and the decree below was granted on the first cause of action. The second cause of action was dismissed on the former appeal to this court. Gardiner v. Equitable Office Bldg. Corp. (C. C. A.) 273 Fed. 451, 17 A. L. R. 431. The theory of the cause of action sustained below is that the defendant assumed an obligation of expense incurred by Mr. Du Pont in the promotion of an enterprise resulting in the incorporation of the defendant, and the construction and ownership by it of the Equitable Office Building in New York City. The decree below is for $100,000, with interest. Both parties, feeling aggrieved, have appealed. The defendant's position is that it should have been awarded a decree below, while the plaintiffs' is that they were entitled to a recovery in the sum of $200,000.

The plaintiffs' intestate originally sued Du Pont individually in a law action. Thereupon Du Pont sued in equity to enjoin the prosecution of the suit at law, claiming fraud in the making of the contract. An answer was interposed, denying the allegations that the representations which furnish the basis for the contract were false. An injunction was granted below, and on appeal to this court we held that an equity action could not be maintained, and that, if the representations were, in fact, false such a defense could be interposed in the law action. Du Pont v. Gardiner, 238 Fed. 755, 151 C. C. A. 605. Thereafter the plaintiff prosecuted to trial his law action against Du Pont individually, and the complaint was dismissed. That result was affirmed in this court, we holding that Du Pont individually was not liable. Gardiner v. Du Pont, 250 Fed. 227, 162 C. C. A. 363. Gardiner having died, the present suit was then commenced, and it was dismissed on a record which contained a stipulation as to some facts, but no matters of defense. In fact, the sufficiency of the complaint was tested below, and on appeal to this court we held that the complaint, together with the facts stipulated, sufficiently stated a cause of action in the first cause of action, and reversed the court below as to it, but held that the second cause of action was properly dismissed. See Gardiner v. Equitable Office Bldg. Corp., 273 Fed. 441, 17 A. L. R. 431. There we said:

"The important question is whether the agreement made by Du Pont with Andrews that this commission to Gardiner for services rendered in connection with the promotion of the enterprise should be paid by the corporation he was to form can be regarded as an expense connected with the enterprise, which Du Pont can be said to have incurred by this recognition of it. If it can be so regarded, the defendant corporation has agreed to pay it, and this action can be maintained. If it cannot be so regarded, the defendant has not promised to pay it, and the action cannot be maintained. * * * We must assume that Andrews, in turning over to Du Pont the enterprise which he was promoting, was influenced by Du Pont's promise that Gardiner's commission should be paid. We cannot assume that Andrews would have turned the enterprise over, unless Du Pont incurred an expense incidental to the prosecution of the enterprise, the payment of which expense was to be contingent upon the action of the corporation to be formed. That corporation was in effect Du Pont. He was to incorporate it, and to name its board of directors, and would presumably control its policy. Good faith seems to require the construction we have placed upon the words the parties used. The question as to any false or fraudulent representations having been made to Du Pont by Andrews, by which he was induced to agree that Gardiner should be paid, is not before us upon this record. The allegations in the answer upon that sub-

ject did not influence the court below in arriving at its conclusion. The learned District Judge expressly disclaimed any knowledge whatever as to whether any such false or fraudulent representations were in fact made. * * * That court did not know, and this court does not know, anything of the kind. At this stage of the case, and upon this record, that question is not in any way before us. If any such representation was made, that was a matter of defense, and had nothing whatever to do with the sufficiency of the complaint, nor of the facts upon which the plaintiff relies. That was the only question before the lower court, and it is the only question before this court. * * * The sole difference between the lower court and this court grows out of the meaning to be attached to the words 'expense incurred by me' in the acceptance by the defendant of Du Pont's offer."

In support of this cause of action, the plaintiffs offered in evidence a letter of August 9th, and an answer thereto, reading as follows:

"August 9th, 1912.

"Mr. T. Coleman Du Pont, Wilmington, Delaware—Dear Sir: Confirming my conversation with you, and recording our understanding with the Equitable Building deal, there is to be paid to George N. Gardiner a commission for services rendered, and to be rendered, of $100,000 cash and $100,000 par value of the common stock of the company, same to be contingent upon the final closing of the deal now in progress for the purchase of the Equitable site and the erection of a building thereon. The cash commission will be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company.

"Yours very truly,      [Signed] Frank M. Andrews."

"Dear Frank: The above is just as I understand it, and provisions will be made to take care of this as early as possible.

"[Signed] T. C. Du Pont."

Mr. Gardiner having died, his executors depend almost entirely upon the testimony of Mr. Andrews, to whom the letter of August 9th was written. It is difficult to ascertain from the evidence what services Mr. Gardiner performed for the $200,000 the plaintiffs seek to recover. The letter refers to payment as "a commission for services rendered and to be rendered." Andrews says that Gardiner initiated the enterprise and put him on the track of it early in 1912, but he admits that he knew the situation from the newspapers, and that the proposition to buy the site was evolved as the result of his submission of sketches to an officer of the Equitable Life Assurance Society. He says Gardiner informed him that he had access to the officers of the Equitable Society. This was denied by all the officers. He says that Gardiner's information led him to seek the $21,000,000 mortgage from the society in lieu of the $20,000,000 mortgage which he had contemplated. This statement is contradicted. He also stated to him that Andrews' sketches were viewed with approval by the society. But the plans were disapproved. The officers so testified. So did Andrews. Andrews says he learned through Gardiner that the Equitable site was held on the society's books at $13,500,000 and not $15,000,000. This proved to be not true. The court below found the services to be those of a messenger only—"very small, if not merely nominal." Andrews offered proof to show that he was informed of the Equitable project, and the court found that Gardiner aided in the organization of the scheme. The testimony of the defendant clearly demonstrates that he had no access to the records of the society, or acquaintance with the officers, or any negotiations that would give him information that

would aid the project; nor did Gardiner render any other services. Mr. Andrews met Mr. Du Pont on July 12, 1912, and then said he had tentative arrangements made for the general financing of the project and for the sale of the second mortgage bonds. He said that Andrews & Co. had subscribed for $500,000 of preferred stock. The proposition made to Du Pont was to come into the deal and take $500,000 preferred stock, and that it would be necessary to have a proposition in writing to be presented to the Equitable Society for their action, which would carry with it a guaranty of $500,000 as earnest money for the carrying out of the offer. At this conversation, a corporation called the Du Pont Company was to be organized. This company was organized on September 18, 1912. It had a capital stock of $12,000,000, $4,000,000 preferred and $8,000,000 common stock. Later, on April 23, 1913, the defendant corporation was organized. The Du Pont Company never took over the enterprise. Andrews' connection with the enterprise ceased about July, 1912, and on April 24, 1913, all the rights acquired from the Equitable Society for the purchase of the site on the contract of August 12, 1912, were turned over to the defendant. One of the conditions named by Mr. Du Pont and agreed to was the clause that the company—

"assume and discharge, and reimburse me [Du Pont] for all my expenses, in connection with negotiating for and securing the delivery of the various instruments and agreements hereinabove mentioned in connection with the work done and materials supplied for the construction of said building in anticipation of the arrangements about to be made, and all other expenses of every kind, either incurred or which may be incurred by me in bringing about such arrangements, including the incorporation of your company and the preparation of instruments for use in the perfecting of such arrangement."

The resolution of the board of directors was passed unanimously accepting the proposition. It is upon this assumption clause of the contract that the plaintiffs claim their right to recover. They claim that one of the expenses incurred by Mr. Du Pont was this commission for services to Gardiner, and that by reason of this assumption clause he is entitled to compel the defendant to carry out Mr. Du Pont's terms in the letter of August 9th.

The defenses interposed are: (1) That Gardiner did not perform any services which he alleges he was employed to perform to ascertain whether the Equitable Life would sell its property and upon what terms; (2) that the assumption clause in the agreement referred to did not include Gardiner's claim; (3) that this corporation was not the corporation mentioned or contemplated in the letter of August 9th; (4) that there were never any moneys available within the meaning of the letter of August 9, 1912, for the payment to Gardiner of the cash sum claimed; and (5) that Du Pont signed and delivered the letter of August 9th under the false representation that Gardiner had performed services of very great value in connection with the Equitable project. The testimony of Andrews makes it clear that at all times, and until the letter of August 9th was written, he was the prime mover in the Equitable project. It was his plan into which Du Pont was invited. The company was to be his, and was organized by him. He repeated that he had a full and complete scheme for obtaining the site and erect-

ing a building thereon to cost about $28,000,000. He stated that he had the financial arrangements made, excepting $500,000, which he wished Mr. Du Pont to put into the enterprise as a subscription. The language of the letter is, not that Mr. Du Pont provides compensation, but that "provision will be made" for Gardiner's compensation. Subsequent to August 9th, it became necessary for Du Pont to assume control of the enterprise. Du Pont then organized a new company without Andrews.

We must examine the surrounding circumstances as now disclosed by all the evidence. The proof dispels the idea that it assumed what Mr. Du Pont was "to make provision for." Andrews admits that he turned the enterprise over to the defendant. The paragraph of the assumption clause contained no specific reference to the claim in question. The letter of August 9th was written after what undoubtedly were false representations made as to Gardiner's services. On December 12, 1912, at a meeting held by those interested, it was clear that Gardiner's connection with the project was then and there ended. The officers of the defendant then and there repudiated any kind of obligation in his favor. The Du Pont Company, not the defendant, was the company contemplated in the letter of August 9th. It was that company's stock which was to be received in payment by Gardiner and not the defendant's stock. The evidence convinces us that it was the Du Pont Company, and not the defendant, which it was intended in the letter of August 9, 1912, would make the provision for the payments to Gardiner. This defendant, in making its agreement with the assumption clause with Du Pont, under these circumstances, could by no process of reasoning be deemed to have made a promise to deliver stock or the proceeds of bonds of the Du Pont Company. The letter of August 9th was written without any expectation of the organization of the defendant corporation.

[1] When the case was here before (273 Fed. 451, 17 A. L. R. 431), there was no evidence to show that the parties had in mind the organization of a second corporation. We were led to believe, from the complaint and the meager facts stipulated, that the parties contemplated and did in fact form the defendant corporation. No obligation was assumed by this defendant when, on August 9th, Du Pont consented to the payment to Gardiner, out of the corporation contemplated in Andrews' plans, the sums which Andrews was liable for to Gardiner up to that date. Under this proof, we do not think that this is an expense which the defendant assumed. It was the Du Pont Company that was to go forward with the project when Andrews and Du Pont were attempting to do business together, and it was its stock and money that was intended to be delivered to Andrews. It is no answer to this position to argue that the property was acquired and the building constructed by a corporation in which Du Pont was interested, nor is it helpful to refer to Du Pont's ownership of stocks and bonds or the defendant's success.

In imposing liability below, the court said that the last sentence of Andrews' letter of August 9th was not a limitation of the right to the money or the designation of a fund out of which alone it was to be paid, "but rather his ground or attempted ground of security addition-

al to the bare obligation to pay." The theory of the plaintiff's claim is stated by them to be "that there is come into the treasury of the defendant, from the sale of its preferred stock and second mortgage, money in excess of $3,000,000 or more than enough to pay the cash commission of $100,000 agreed to be paid to the plaintiff's testator." The letter of August 9th provided:

"The cash commission will be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company."

[2] If the contract meant stock and money from the Du Pont Company, no such stock or moneys were ever received and paid. We do not regard the language of this letter as a grant of security additional to the bare obligation to pay. The parties never so regarded it. On October 9th Gardiner wrote that he desired the compensation, because he was informed that the preferred stock had been sold, and therefore he was entitled to his pay, and Du Pont answered, saying he was not entitled to it, for the stock had not been sold. We regard this language of the letter of August 9th as a condition precedent, the performance of which was necessary before liability arose under the terms of the letter. Gardiner v. Du Pont, 250 Fed. 228, 162 C. C. A. 363. Indeed, when a particular clause of payment is named, it is not competent to show by parol that payment was to be made in some other manner than that specified in the written instrument. Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145; Lyman v. N. P. Elevator Co. (C. C.) 62 Fed. 891. When payment is made out of an agreed fund, until such fund has been created, there can be no liability. It is a condition precedent. Lighton v. Syracuse, 188 N. Y. 499, 81 N. E. 464; Tooker v. Arnoux, 76 N. Y. 397; Lorillard v. Silver, 36 N. Y. 578.

[3] We regard the preponderance of evidence as demonstrating false representations as to the services of Mr. Gardiner which influenced Du Pont in signing the letter of August 9th, and this too, precludes the plaintiff's recovery. It was found as a fact below that the services were merely those of a messenger. They were not "very valuable," as represented to Mr. Du Pont. When he inquired as to what the brokerage of $200,000 was for in the financial requirements, he was told as a fact that "it is all right" and that Gardiner's services were very valuable. From the foregoing, it is apparent that Gardiner performed no services of any value. The statements made were not mere matters of opinion, but were statements of fact. The facts as to the services rendered were peculiarly within the knowledge of Andrews, and Du Pont was ignorant of the same. Independent of any fiduciary relations, a person who acts after obtaining such facts and on the faith of such representations, which are afterwards shown to be untrue, may have redress in equity against such deceit. Du Pont was guided in this transaction and relied upon the honesty of the statements as to the value of the services, but was deceived. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1174, 23 L. Ed. 391; Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42; Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; Bloomquist v. Farson, 222 N. Y. 375, 118 N. E. 855; Murray v. Tolman, 162 Ill. 417,

44 N. E. 748; Picard v. McCormick, 11 Mich. 68; Griffin v. Farrier, 32 Minn. 474, 21 N. W. 553; Simar v. Canaday, 53 N. Y. 306, 13 Am. Rep. 523; Southern Trust Co. v. Lucas, 245 Fed. 286. These statements of fact rise to greater dignity than mere expression of opinion, and if, as he says, he acted under them for all practical and effective purposes, he was misled thereby.

Decree reversed, and the court below is directed to dismiss the complaint on the merits.