### In re QUALITY SHOE SHOP, Inc.

(District Court, E. D. Pennsylvania. April 6, 1914.)

No. 4905.

1. BANKRUPTCY (§ 350*)—CLAIMS—PRIORITY—RENT.
   A provision in a lease that, if the lessee was sold out at sheriff's sale or in bankruptcy, etc., the rent for the balance of the term should at once become due and payable, as if made payable in advance, and should be first paid out of the proceeds of the sale, gave the lessor priority upon the lessee's bankruptcy, under the Pennsylvania law.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. § 350.*]

2. CORPORATIONS (§ 448*)—LIABILITY ON CONTRACTS OF PROMOTERS.
   C., doing business as the Q. Shoe Shop, executed a lease in that name and his own. The incorporation of the business under that name was then contemplated and was thereafter accomplished. The three stockholders, who were also directors, were C.'s wife, son, and son-in-law, and they, after employing C. as general manager, held no further meetings. C. continued the business, having full charge as before; no change being apparent or announced. The first month's rent was paid by Mrs. C., who was repaid by the corporation, and it thereafter paid the monthly installments until bankruptcy became imminent. *Held* that, though the lease was never formally assigned to or accepted by the corporation, it was bound thereon, as C. was acting as its promoter and agent, and it could, and by its conduct did, ratify his unauthorized act.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

In Bankruptcy. In the matter of the Quality Shoe Shop, Incorporated, bankrupt. On report of the referee disallowing a claim for rent. Order reversed, with instructions.

Julius C. Levi, of Philadelphia, Pa., for landlord.

Porter, Foulkrod & McCullagh and Abram Peterzell, all of Philadelphia, Pa., for trustee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
212 F.—21

J. B. McPHERSON, Circuit Judge. The decision of this case has awaited the determination of the appeal taken from a recent ruling in this district. Re Keith-Gara Co. (D. C.) 203 Fed. 585. That ruling having been affirmed a few days ago (sub nom. Ludlow, Trustee, v. Pugh, 213 Fed. 450, 130 C. C. A. 96), the pending controversy will now be disposed of. The facts are as follows:.

On August 26, 1913, an involuntary petition was filed against the Quality Shoe Shop, and on September 22 the adjudication was entered. The assets of the bankrupt were sold by a receiver, and upon a distribution of the fund Bacharach & Co., the landlords of the place of business occupied by the Shop, presented a claim for one year's rent. The lease had about 16 months to run, and the landlords asserted priority under the Pennsylvania law, basing their claim upon the following clause in the lease:

"It is agreed and understood that, should the lessee make an assignment for the benefit of creditors, or be sold out at sheriff's sale, or in bankruptcy or insolvency, or under any other compulsory procedure or order of court, then the rent for the balance of the term shall at once become due and payable, as if by the terms of the lease it were all payable in advance, and shall be first paid out of proceeds of such assignment or sale, any law, usage, or custom to the contrary notwithstanding."

[1, 2] Undoubtedly this position was sound (Ludlow v. Pugh, supra), if the bankrupt was bound by the lease, and this, therefore, is the only question for decision. The referee rejected the claim, holding that the lease did not bind the corporation; but in my opinion the facts point to a different conclusion.

What happened was this: In January, 1913, Samuel Cohen was occupying the premises in question, and was doing business as an individual under the name of the Quality Shoe Shop. On January 16 he executed the lease now under consideration. The contract recites the parties as the Ledger Building Realty Company, agents for Bacharach & Co., lessors, and "Samuel Cohen, trading as Quality Shoe Shop," lessee; and the lessee signed as "Quality Shoe Shop, Samuel Cohen." At this date, the incorporation of the business under the same name was in contemplation and a charter had either been already applied for or was applied for within a few days thereafter. This is evident, for the charter was granted on February 19, and in Pennsylvania previous advertising for three weeks is necessary before an application can be laid before the Governor. Three persons were named as corporators and subscribers for all the stock, two of them—Cohen's wife and son—signing the application, and subscribing for 64 shares out of 100. The third corporator and subscriber (although not a signer) was Cohen's son-in-law. The three subscribers were also the directors of the company, but the testimony shows that there "was not any occasion to have a meeting after February 22, when Cohen was employed as general manager at a salary of $3,-600 per year." He continued the business and had full charge in the same manner as before, no change being either visible or announced. The first month's rent was paid by a check in Mrs. Cohen's name, but the corporation repaid the money afterwards, and thereafter paid the monthly installments regularly until bankruptcy became imminent.

The situation is shown so clearly in the frank testimony of Samuel Cohen that I quote a part of his examination:

"Q. You expected to incorporate when you signed the lease, didn't you?
"A. That is right.
"Q. And the corporation got the store immediately upon its incorporation?
"A. That is right.
"Q. You took possession under the lease on February 1, 1913?
"A. February 1, was it?
"Q. Yes?
"A. I want to be careful what I say.
"Q. What is your answer?
"A. Yes.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Q. And your corporation paid the rent, $375, during its occupancy of the premises?
"A. That is right.
"Q. And they paid the rent stipulated under the lease executed by you January 16, 1913? Read it and you can tell, you are so careful.
"A. That is right.
"Q. And they availed themselves of all the rights, benefits, and privileges which you had?
"A. Under the lease.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Q. How much rent did the Quality Shoe Shop pay a month for use and occupation of its premises?
"A. $375 a month.
"Q. That is the same rent that you were to pay under the terms of the lease for the same floor?
"A. That is right.
"Q. Under the lease dated January 16, 1913, for a term of 23 months, the 1st day of February, 1913?
"A. Yes.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Q. Under the minutes of the Quality Shoe Shop at its meeting held February 22, 1913, you were elected manager?
"A. Yes, sir.
"Q. For a term of one year at salary of $3,600?
"A. Yes, sir.
"Q. And you had full charge of the conduct and management of the business of the Quality Shoe Shop?
"A. That is right.
"Q. So there was no change so far as the occupancy of the premises was concerned after the lease was executed, was there?
"A. No change.
"Q. You were the only one in charge before and after the incorporation of the company?
"A. Yes, sir.
"Q. It was always known as Quality Shoe Shop, was it not?
"A. Yes, sir.
"Q. And the signs at your place of business all read Quality Shoe Shop?
"A. Yes, sir.
"Q. You traded, when you signed the lease, as Quality Shoe Shop?
"A. That is right.
"Q. And when you incorporated you traded as Quality Shoe Shop?
"A. That is right.
"Q. Were notices of these facts given to the landlords, Bacharach & Co.; or to the Ledger Building Realty Company, that a corporation was occupying the property?
"A. Not to my knowledge.
"Q. You never communicated it to the landlord, or their recognized agents. Ledger Building Realty Company?
"A. Never.

"Q. But you continued to occupy the premises, and paid the rent stipulated and provided for under the terms of the lease? That is right, is it not?

"A. That is right:

"Q. And secured and obtained as manager of the corporation all the benefits and advantages which you were entitled to as an individual, trading as Quality Shoe Shop?

"A. That is right.

"Q. The board of directors of the stockholders of the Quality Shoe Shop never held any meetings after February 22, 1913, did they?

"A. I do not think they did. No; they did not.

"Q. In other words, they incorporated, went through the formalities of a corporation, and you ran the business?

"A. That is right.

"Q. Until it met with disaster?

"A. That is right.

"Q. That is the whole story?

"A. That is the whole story."

This testimony speaks for itself, and does not seem to need discussion. The lease was never formally assigned to the corporation, and the corporation never accepted it by any formal official action. But neither of these steps was essential. The substance and reality of this family transaction appear to be plain enough. When Cohen signed the lease, he was acting as promoter and agent of a corporation then on the point of being formed, and (while he may have bound himself also by the execution of the lease) I have no doubt that he intended to bind the corporation, and I find as a fact that he was acting in its behalf. That the corporation could ratify this previously unauthorized act done for its benefit is a proposition that needs no citation of authority to support it; and that such ratification might be proved by the company's conduct as completely as by a formal corporate act is I think equally plain. For both propositions, however, I may refer to the notes in 26 L. R. A. 548, 549. The learned referee inadvertently overlooked or minimized the decisive importance of these questions of agency and ratification.

The order of December 29, 1913, is reversed, with instructions to allow the claim.