In re LANCE LUMBER CO.

WEBBER v. GEORGE F. LANCE CO.

(Circuit Court of Appeals, Third Circuit. December 6, 1916.)

No. 2134.

CORPORATIONS ☞448(2)—CONTRACTS—LIABILITY.

A sale was negotiated to C., acting in behalf of a corporation to be formed, G. dealing with him in that character; and while C.'s individual notes were taken by G., both understood that the corporation's notes would take their place as soon as this could be done, and on formation of bankrupt the property passed to it, and it for three or four years made payments on and renewals of the notes. *Held,* that there was in effect a sale by G. to bankrupt, so that G.'s claim on the balance of notes given in substitution and renewal of the purchase-money notes was properly allowed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1790, 1792; Dec. Dig. ☞448(2).]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

In the matter of the Lance Lumber Company, bankrupt. From an order upholding the claim of the George F. Lance Company (224 Fed. 598), W. W. Webber, trustee, appeals. Affirmed.

J. R. Dickinson, of Reading, Pa., and Charles B. Ermentrout, of Philadelphia, Pa., for appellant.

J. A. Keppelman, of Reading, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The Lance Lumber Company was adjudged bankrupt in January, 1913, and the pending appeal is from the allowance of a claim presented by the George F. Lance Company against the estate. The basis of the claim is two unpaid notes, aggregating $5,591, bearing date in November and December, 1912, respectively, each made by the bankrupt to the claimant's order. The referee rejected the claim, but the District Court allowed it. 224 Fed. 598. The notes are the last of a series that began in February, 1909, and the controversy about them will be sufficiently explained by an outline of what occurred between the bankrupt, the claimant, and a third party, Cameron Lance.

The claimant, a Pennsylvania corporation organized in 1907, was a lumber dealer in the city of Reading. In August, 1908, it decided to go out of business, and with that end in view the board of directors resolved that the corporate property should be sold as soon as this could be done without a sacrifice. How much was disposed of during the next few months we do not know; but a considerable stock was still on hand in January, 1909. On the 23d of that month, Cameron Lance, who owned none of the claimant's shares, and was not connected with its business, offered to buy the unsold lumber and equipment, and to

pay for it with notes at 3, 6, 9, and 12 months. These were to be notes of "himself or his assigns," and we think the evidence establishes that both parties knew Cameron's intention to organize at once a new corporation, that should go into business with the property thus purchased and should undertake to pay for it. On this understanding the claimant agreed to sell, and accepted the further offer of Cameron to lease a portion of its yard. A price of $12,500 was agreed upon, Cameron gave four notes, dated February 1, the lease was made, and on February 20 the claimant's board of directors ratified and confirmed the transaction. (Later in the year—on November 13 —the claimant's stockholders ratified and confirmed the board's "sale of its lumber and equipment to Mr. J. Cameron Lance and his assigns.")

On February 20, Cameron had not yet organized his company— the bankrupt's certificate of incorporation is from the state of Delaware, and bears the date of February 19—but on March 6 (the organization having meanwhile been effected) he made a formal offer to sell, and the bankrupt agreed to buy, the lumber he had bought from the claimant in January and February, with any accretions since made thereto, and with the good will of the claimant, "so far as the same is connected with the lumber business formerly carried on by that company." A valuation of $25,000 was agreed upon, and in payment thereof the whole capital stock of the bankrupt ($25,000) was to be issued to Cameron, "his nominees or assigns." He was elected secretary and treasurer, and in effect managed all the company's affairs. So far as appears, the details of the transaction between Cameron and the bankrupt were not known to the claimant.

On April 10, the claimant's treasurer reported to his board that the bankrupt had been organized, and "that hereafter the notes given by J. Cameron Lance personally to this company for the lumber and equipment purchased by him for himself and his assigns would be renewed and paid in part from time to time by the Lance Lumber Company." Thereupon the board resolved:

"That this company accept from the Lance Lumber Company its notes and checks in renewal and part payment respectively of the notes of Mr. J. Cameron Lance now held by this company, the first of which said notes will be due May 1, 1909."

As already stated, this was the existing arrangement between Cameron and the claimant, and it was faithfully carried out for nearly four years. During this period the notes originally signed by Cameron were renewed by the bankrupt (except on one or two occasions, when Cameron signed the notes), and all the payments, either of principal or of interest, were made by the bankrupt out of its own funds. And this was done, although Cameron ceased to be the bankrupt's treasurer in October, 1910, and was succeeded in that office by another person.

Much of the trustee's argument relies on certain transactions between Cameron and the bankrupt in reference to the $25,000 of capital stock that was issued to pay Cameron for the lumber, and for present purposes we may concede that these transactions were loose and irregular. But we do not regard them as decisive in the present

inquiry; the claimant does not appear to have known anything about them, and is not chargeable with knowledge. Its chief interest was to see that the original arrangement was carried out, and apparently this was consummated by the incorporation of the bankrupt, by its subsequent taking over of the lumber that Cameron had formally bought in February, and by the bankrupt's assumption of the notes that he had signed at that time. Indeed, the trustee's position has no adequate support, unless Cameron's purchase in February was an independent transaction on his individual account, and unless his subsequent transfer to the bankrupt was in like manner independent and without relation to the original purchase. In our opinion, the facts are different. Cameron was acting in behalf of the company thereafter to be organized, and the claimant was dealing with him in that character; and, while the original notes were in form Cameron's individual obligations, both parties understood that the bankrupt's notes would take their place as soon as this could be done. After these understandings were carried out, the transaction became in form what in truth it had always been—a sale by the claimant to the bankrupt. The equities are with the claimant; its property passed to the bankrupt through Cameron's hands—he was little more than a conduit for the transmission of the title—and, although the bankrupt did not assume the notes by a formal resolution of its board, its renewals and payments during the next 3 or 4 years show distinctly that it had in fact accepted the arrangement made in its behalf. Certainly it paid more than half the debt out of its own funds, and this is a fact that can hardly be explained on any other theory. If Cameron was delinquent in his dealings with the bankrupt—a matter that does not now concern us—the claimant is not chargeable on that account.

The order allowing the claim is affirmed.