## GARDINER et al. v. EQUITABLE OFFICE BLDG. CORPORATION.

(Circuit Court of Appeals, Second Circuit.  April 6, 1921.)

No. 63.

1. **Corporations** ☞448(2)—**Accept benefit of contract made by promoters cum onere.**

There is no implied liability on the part of a corporation to its promoters for their services and expenses, and it is not liable therefor, in the absence of an express promise made after its organization, unless the liability is imposed by its charter or by the general law; but, where the corporation accepts the benefits of a contract made by the promoters, it is subject to the burdens of the contract of which it had knowledge.

2. **Corporations** ☞428(5)—**Knowledge of director chargeable to corporation only when he acts for it in the transaction.**

Knowledge of a director is not imputable to the corporation, in a transaction between them in which he acts for himself, and not for the corporation, nor is knowledge obtained by a director before he became such, unless it is present in his mind when acting for the corporation in a transaction to which it is material.

3. **Corporations** ☞448(2)—**May expressly or impliedly adopt contract made for it by promoters.**

Under the American authorities, a contract made by promoters in behalf of a corporation projected, but not yet formed, may be adopted by the corporation and become binding on it, if it expressly or impliedly adopts the contract after its organization.

4. **Corporations** ☞448(2)—**Held to have assumed a liability contracted for in its behalf by promoter.**

The promoter of a scheme to build a large office building in New York City employed plaintiffs' testator to render services in connection with securing the desired site. After that had been arranged for he turned the project over to another, who agreed, on behalf of the corporation to be organized to carry on the enterprise, to pay a stated sum for such services in cash and stock of the corporation. He organized defendant corporation, of which he became a director, and which accepted his offer to turn over his contracts and property acquired by him "in consideration and on condition" of the doing of certain things by defendant, among others that it would "assume and discharge and reimburse me for all my expenses in connection with" securing the property and preparing for building "and all other expenses of every kind, either incurred or which may be incurred by me in bringing about such arrangements." *Held*, that such acceptance bound defendant to fulfill the promoter's agreement to pay for the services of plaintiffs' testator as expenses of the enterprise, though no services were rendered directly for such promoter or defendant.

5. **Corporations** ☞501—**Complaint to charge corporation on contract made by promoter held to state cause of action in equity.**

Complaint in an action to charge a corporation with liability on a contract made in its behalf by a promoter before its organization *held* to state a cause of action in equity.

Hough, Circuit Judge, dissenting.

Appeal from and in Error to the District Court of the United States for the Southern District of New York.

Action by Bentley Gardiner and Mary Elsie Gardiner, executors of the will of George N. Gardiner, deceased, against the Equitable Office Building Corporation. Complaint dismissed, and plaintiffs bring error and appeal. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiffs are citizens of the state of New Jersey and the defendant is a corporation organized under the laws of the state of New York. The action is brought for breach of contract, and damages in the sum of $200,000 are asked, together with interest thereon from April 24, 1913. The complaint alleges the death of George N. Gardiner oh July 17, 1914, and that the plaintiffs are the sole acting executors of his will. It sets out two causes of action.

For the first cause of action it is alleged that one Frank M. Andrews arranged with George N. Gardiner, the plaintiffs' testator, that the latter should ascertain from the officers of the Equitable Life Assurance Society whether or not a proposition would be entertained for the purchase of the site on which what was known as the "Equitable Building" stood, in the city of New York, and the erection thereon of a modern office building by an outside company, provided the society could be assured of the good faith and financial ability of the persons interested to carry out the enterprise. It is alleged that Gardiner was personally acquainted with the officers of the society, and that he was to secure information in regard to the attitude of the officers towards such a proposition, and the terms on which they would be willing to entertain the same. It is alleged that Gardiner did procure such information, and that it was valuable to Andrews, and enabled him to prepare a plan for organizing and financing the project; that thereafter Andrews and T. Coleman Du Pont entered into arrangements whereby Andrews turned over the enterprise to Du Pont, and the latter promised to provide for and pay out of funds to come into the treasury of a company to be organized to carry out the project the obligations and expenses incurred in the formation thereof, including the sum of $200,000 to be paid to Gardiner, the payments to be contingent upon the closing of the deal with the Equitable Life Assurance Society, which deal was then in progress for the purchase of the Equitable site and the erection of a building thereon; that $100,000 was to be paid in cash, and $100,000 in par value of the common stock of the said company; that the cash commission was to be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company.

Then it is alleged that thereafter an agreement was entered into between the society and Du Pont, wherein it was agreed that the former would sell the site hereinbefore referred to, and the latter agreed that the corporation to be organized by him would erect upon the premises a 36-story fireproof office building according to plans to be approved by the society. It is further alleged that Du Pont caused the defendant corporation to be organized and incorporated, and that he became a director thereof; that Du Pont then made a certain offer to the defendant concerning the plan and enterprise hereinbefore referred to, which offer was accepted by the defendant; that the defendant, in accepting Du Pont's offer, "agreed to assume and discharge and reimburse said Du Pont for all of his expenses in connection with negotiating for and securing the delivery of the various instruments and agreements in connection therewith, and in connection with the work done and materials supplied for the construction of the building in anticipation of the arrangement between him and the defendant, and of all other expenses of every kind, either incurred or which might be incurred by him in bringing about such arrangements, including the claim of the plaintiffs' testator." There are other allegations in connection with the first cause of action, but which it is not necessary in this connection to set forth.

For the second cause of action it is alleged that T. Coleman Du Pont, acting for and on behalf of a corporation thereafter to be formed (the defendant), entered into an arrangement with Frank M. Andrews to take over the enterprise on behalf of the corporation and to provide for the payment of the obligations incurred in the formation thereof, including an item of $200,000 to be paid to the plaintiffs' testator in consideration of the services rendered and to be rendered by Gardiner in connection with the enterprise, and that the said Du Pont acting for and on behalf of the corporation thereafter to be formed promised and agreed to provide for and pay out of funds to come into the treasury of the said company the obligations and expenses incurred in the promotion thereof, including the sum of $200,000 to be paid to plaintiffs'

testator as aforesaid, the same to be contingent upon the closing of the deal with the Equitable Life Assurance Company.

The seventeenth paragraph of the complaint reads as follows: "Upon information and belief, that in consideration of the said promises and agreements, said Andrews turned over and transferred to said Du Pont, acting for and on behalf of said company thereafter to be organized, the enterprise and project referred to, and said Du Pont, on behalf of said corporation, accepted and took over the same, and as part payment and consideration therefor, and for services rendered and to be rendered by the plaintiffs' testator in connection therewith, acting for and on behalf of said corporation, made and entered into an agreement with the plaintiffs' testator, wherein and whereby he agreed that there was to be paid out of funds to come into the treasury of said company one hundred thousand dollars ($100,000) in cash and one hundred thousand dollars ($100,000) par value of the common stock of said company, same to be contingent upon the final closing of the deal then in progress for the purchase of the Equitable site and the erection of a building thereon, the cash commission to be paid out of the first moneys available from the sale of the preferred stock and second mortgage bonds of the company."

It is alleged that the deal above referred to was consummated between the Equitable Life Assurance Society and the said Du Pont, and that a modern office building had been erected on the Equitable site, from which the defendant was receiving the rents, and that there had come into the defendant's treasury from the sale of its preferred stock and second mortgage bonds moneys in excess of $3,000,000, and far more than sufficient to pay the cash commission of $100,000 agreed to be paid to the plaintiffs' testator, and that there had been issued by the defendant shares of its common stock to an amount far in excess of the $100,000 par value of common stock agreed to be delivered to the plaintiffs' testator as provided for in the agreement.

When the cause came on for trial, counsel for the defense moved that the first cause of action be tried in equity, and that the second cause of action, if construed as a promoter's contract, be dismissed. If the second cause of action was not to be construed as a promoter's contract, but in effect as a different way of repeating the facts set out in the first cause of action, then that the second cause of action also be tried in equity.

The court took the matter under advisement, and then announced that in his opinion the first cause of action stated a cause of action in equity; that the second cause of action might be considered as a cause of action arising out of a so-called promoter's contract; that, so regarded, he thought it stated a cause of action at law, which entitled the plaintiffs to a jury. He added that, if at the trial the testimony failed to indicate that after the corporation came into existence a new contract was made, as distinguished from a so-called ratification of the promoter's agreement, he would feel bound to dismiss the complaint as to that cause of action.

In the discussion which took place between the court and counsel, it was suggested that no services were rendered by Mr. Gardiner to anybody after August 9, 1912, and that the defendant corporation was not organized until April 24, 1913. The court declared that, if it should appear that such were the facts, he thought a motion to dismiss the second cause of action would have to be granted; that if counsel for the plaintiffs elected to stand on the first cause of action, it would be tried in equity; that if he elected to stand on the second cause of action, he would try without a jury first the third separate defense, reserving the right to call in a jury if he deemed it proper as the case developed; the third separate defense being that the representations made by Andrews to Du Pont, that Gardiner had rendered services of value, were false—that being a defense cognizable solely in equity, there being no representations that these false representations were also fraudulent; that the proper order of procedure in the trial of a case at law to which there was an equitable defense was that such defense must first be tried.

This statement of the District Judge gave counsel full information as to what might be expected, and saved the time and expense which would have been involved if the parties had gone to trial and testimony had been taken. This was made unnecessary by a stipulation of counsel as to the facts.

Before putting that stipulation on the record, counsel for the plaintiffs made two motions, both of which were denied, and exceptions were granted:

First. That the third defense to the first cause of action be dismissed, on the ground that no facts were set up to show a legal or an equitable defense, and the plaintiffs were entitled to their jury trial.

Second. That there was no allegation on the part of the defendant to return or offer to return the fruits of the contract which it took, and, having taken the benefit, it must assume the burden.

Thereupon the stipulation of the parties was read into the record. It was stipulated, first, that the contract alleged in paragraph seventeenth of the complaint as having been made between the plaintiffs' testator, George N. Gardiner, and T. Coleman Du Pont, is set forth in the following letter:

"August 9, 1912.

"Mr. T. Coleman Du Pont, Wilmington, Delaware—Dear Sir: Confirming my conversation with you and recording our understanding in connection with the Equitable Building deal, there is to be paid Mr. George N. Gardiner a commission for services rendered, and to be rendered, of $100,000 cash and $100,000 par value of the common stock of the company, same to be contingent upon the final closing of the deal now in progress for the purchase of the Equitable site and the erection of a building thereon. The cash commission will be paid out of the first moneys available from the sale of preferred stock and second mortgage bonds of the company.

"Yours very truly,    [Signed]    Frank M. Andrews."

"Dear Frank: The above is just as I understood it, and provisions will be made to take care of this as early as possible.

"[Signed]    T. C. Du Pont."

Second. That from the date of said letter, August 9, 1912, to about December 12, 1912, no one called upon George N. Gardiner to render any services to Mr. Andrews, Mr. Du Pont, the Du Pont Company, the defendant corporation, or any other person or corporation, and on or about December 12, 1912, Mr. Du Pont informed Mr. Gardiner that no future services would be required of him. Other matters stipulated will be referred to in the opinion.

Counsel for the defense moved to dismiss the complaint as an entirety, on the ground that the facts alleged were not sufficient to constitute a cause of action at law or in equity. The court thereupon dismissed the complaint and each cause of action thereof.

Kellogg & Rose, of New York City (Abram J. Rose and Alfred C. Pette, both of New York City, of counsel), for plaintiffs in error.

Simpson, Thacher & Bartlett, of New York City (Julius F. Workum, and Adrian L. Foley, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is the third time that the subject-matter of this litigation has been before this court. It came here first in Du Pont v. Gardiner, 238 Fed. 755, 151 C. C. A. 605. We held at that time that an injunction was improperly granted restraining Gardiner from maintaining an action at law against Du Pont. All that we decided in that case was that in an action brought on a contract which was not under seal it was a good defense at law that the contract was induced by fraudulent representations. The matter came here next in Gardiner v. Du Pont, 250 Fed. 227, 162 C. C. A. 363, and we decided that the evidence was insufficient to sustain an action against Du Pont for breach of contract; the evidence not indicating that Du Pont was binding himself individually, or

that the parties believed he was binding himself, but that the understanding was that the contract should be performed by a corporation to be formed.

In the present suit the action is brought against the corporation which the parties contemplated should be formed and which later was formed. It having been decided that the contract was not the personal obligation of Du Pont, we must now determine whether there exists any obligation on the part of the defendant corporation.

[1] It has been held in some jurisdictions that, if the promoters of a corporation necessarily perform services or incur expenses in obtaining a charter, in securing subscriptions to the capital stock, and in otherwise perfecting the organization and such services were necessary and reasonable, and not rendered gratuitously, but with the understanding and expectation of the promoters that they were to be paid for, a promise to pay by the corporation after its organization and acceptance of the benefits of such services or expenses will be implied. Farmers' Bank of Vine Grove v. Smith, 105 Ky. 816, 49 S. W. 810, 88 Am. St. Rep. 341; Low v. Connecticut & Passumpsic Rivers R. Co., 45 N. H. 370; Hall v. Vermont & Massachusetts R. Co., 28 Vt. 401. In laying down the above rule it has been said that any other doctrine would render it difficult to organize any corporation, however necessary. But the weight of authority seems clearly to be that there is no such liability on the part of a corporation to its promoters, in the absence of an express promise by it after its organization, unless, as is sometimes the case, such liability is imposed by the charter or the general law. Melhado v. Porto Algere, New Hamburgh & B. Ry. Co., L. R. 9 C. P. 503; New York & New Haven R. Co. v. Ketchum, 27 Conn. 170; Rockford, Rock Island & St. L. R. Co. v. Sage, 65 Ill. 328, 16 Am. Rep. 587; Weatherford, Mineral Wells & Northwestern Railroad Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837.

Then it is said that a corporation which has had the benefit of a promoter's contract accepts it cum onere, and is liable thereon. The rule on this subject is stated in Cook on Corporations (7th Ed.) vol. 3, p. 2411, as follows:

"A corporation, accepting the benefits of the contract of its incorporators, must accept the burden, and a promoter's contract, which has been ratified or adopted by the corporation, or the benefits of which have been accepted by the corporation with knowledge of such contract, may be enforced against it."

And see Morgan v. Bon Bon Co., 222 N. Y. 22, 118 N. E. 205.

But it is important to understand exactly what is meant when it is said that, if a corporation accepts the benefit of a contract made by its promoters, it takes it cum onere. In Re Rotherum, etc., Co., 50 Law T. (N. S.) 219, this language is used by one of the justices:

"It is said that Mr. Peace has an equity against the company, because the company had the benefit of his labor. What does that mean? If I order a coat, and receive it, I get the benefit of the labor of the cloth manufacturer; but does any one dream that I am under any liability to him? It is a mere fallacy to say that, because a person gets the benefit of work done by somebody else, he is liable to pay the person who did the work."

And see Weatherford, etc., Ry. Co. v. Granger, supra.

We do not challenge the proposition that a corporation, in accepting the benefits of a promoter's contract, takes it subject to the burdens, but we do not see wherein it has any application to the facts of this particular case. The theory, as we understand it, seems to be that Andrews made arrangements with Gardiner to procure information, which information was procured by Gardiner and was valuable to Andrews, and enabled him to prepare and formulate a plan for organizing and financing the project for the purchase of the Equitable site and the erection of an office building thereon; that after a tentative plan had been formulated by Andrews, and after information had been obtained by Gardiner in connection therewith, Du Pont entered into arrangements with Andrews to take over the enterprise and to provide for the payment of the obligations incurred in the formation thereof; that a statement was made up, showing the obligations and expenses incurred, included in which was an item of $200,000 to be paid to Gardiner, in consideration of the services rendered and to be rendered by him; that in consideration of the turning over by Andrews to Du Pont of said enterprise and of the services rendered by Gardiner, Du Pont promised that there should be paid out of the treasury of the company the obligations and expenses incurred in the formation thereof; that defendant was organized by Du Pont, and in consideration of the turning over to it of said plan and enterprise promoted by Andrews and Du Pont, with Gardiner's assistance, and of the payments to it by Du Pont referred to in his offer, the defendant has had the benefit of Du Pont's agreement, and is therefore impliedly bound to pay the Gardiner commission.

[2] So far as this argument is concerned, it is enough to say that to make the principle applicable the corporation must have accepted the benefits with knowledge of the facts. All of the cases which recognize the doctrine so hold. And there is no evidence in this record that the corporation knew of the agreement made by Du Pont in the Andrews letter. It is true it is said that two of the directors, Du Pont and Dunham, had actual knowledge of the letter at the time of the taking over of the enterprise by the defendant. So far as the knowledge of Du Pont is concerned, it is clear that it was not imputable to the corporation. A corporation is not charged with notice of facts known to a director in a transaction between him and the corporation, in which he is acting for himself and not for the corporation. Davis Improved Iron Wagon Co. (C. C.) 20 Fed. 699; Commercial Bank v. Cunningham, 24 Pick. (Mass.) 270, 276, 35 Am. Dec. 322; Burt v. Batavia Paper Manufacturing Co., 86 Ill. 66. The general rule that the knowledge of the agent is imputed to the principal rests upon the presumption that the agent will disclose what it is his principal's business to know and the agent's duty to impart. But the rule does not apply where the agent contracts with his principal, because in such a case there is no reason to presume that the agent will impart information which it is for his interest to suppress. The knowledge of a promoter is not to be imputed to his corporation. Machen on Corporations, vol. 1, § 348.

It is also true that the knowledge of Dunham cannot be imputed to the corporation. At the time Dunham obtained knowledge of the transaction, he was not a director. In Houseman v. Girard Mut. Bldg. & Loan Ass'n, 81 Pa. 256, quoted in Gilkeson v. Thompson, 210 Pa. 355, 359, 59 Atl. 1114, 1115, Judge Sharswood said:

"It is only during the agency that the agent represents, and stands in the shoes of his principal. Notice to him is then notice to his principal. Notice to him 24 hours before the relation commenced is no more notice than 24 hours after it had ceased would be."

It is not necessary that we should express our opinion concerning Judge Sharswood's statement. It is a proposition not everywhere accepted. While the knowledge of an agent, according to the trend of recent decisions, may be attributed to his principal, it cannot be so attributed unless it is clearly shown that the agent, while acting for the principal in a transaction to which the information is material, has the information present in his mind. Harrington v. United States, 11 Wall. 356, 20 L. Ed. 167; Vulcan Detinning Co. v. American Can Co., 72 N. J. Eq. 387, 67 Atl. 339, 12 L. R. A. (N. S.) 102; Suit v. Woodhall, 113 Mass. 391; Slattery v. Schwannecke, 118 N. Y. 543, 23 N. E. 922; Booker v. Booker, 208 Ill. 529, 70 N. E. 709, 100 Am. St. Rep. 250. Or unless, according to some of the authorities, the information was acquired so recently or under such circumstances that it will be presumed to have been in his mind at the time of the transaction in question. Alger v. Keith, 105 Fed. 105, 44 C. C. A. 371; Henry v. Omaha Packing Co., 81 Neb. 237, 115 N. W. 777; Brothers v. Kaukauna Bank, 84 Wis. 381, 54 N. W. 786, 36 Am. St. Rep. 932; Jenkins Bros. Shoe Co. v. Renfrow, 151 N. C. 323, 66 S. E. 212, 25 L. R. A. (N. S.) 231.

In Cook on Corporations (7th Ed.) vol. 3, § 727, p. 2591, it is said:

"The corporation is sometimes chargeable with knowledge of facts which are known to one of its directors; but there are so many exceptions to this rule that the only safety lies in a study of the cases themselves."

We shall not enter upon a detailed study of the cases, not finding it necessary, in view of the fact that it does not affirmatively appear upon this record that Dunham was present at the time Du Pont's offer was submitted to and acted upon by the board. It is true the record states that the vote taken on the offer was unanimous. But that affords no proof that a full board was present. It simply shows that no one who was present voted against the acceptance of the offer.

[3] The English courts hold that a contract made by promoters in behalf of a corporation projected, but not yet formed, cannot by adoption bind the company when incorporated. They hold that a new contract is necessary. The adoption and confirmation by the deed of settlement, or its modern equivalent, the memorandum of association, will not render the contract binding on the company. Gunn v. London, etc., Fire Ins. Co., 12 C. B. (N. S.) 694; In re Northumberland Ave. Hotel Co., 33 Ch. D. 16. In the same way the confirmation by the directors of a preincorporation contract is under the laws of England insufficient to bind the corporations to the contract. In re Dale

& Plant, 61 L. T. 206; North Sydney Investment, etc., Co. v. Higgins, [1899] A. C. 263, 271.

In this country our courts have held, and the great weight of authority supports the proposition, that a preincorporation contract may be adopted by the corporation and become binding on it, if it expressly or impliedly adopts it after it comes into existence. In re Lance Lumber Co., 237 Fed. 357, 150 C. C. A. 371; In re Ballou (D. C.) 215 Fed. 810; In re Quality Shoe Shop (D. C.) 212 Fed. 321; Cook v. Sterling Electric Co., 150 Fed. 766, 80 C. C. A. 502; Bridgeport Electric, etc., Co. v. Meader, 72 Fed. 115, 18 C. C. A. 451; Seymour v. Spring Forest Cemetery Association, 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859; Forbes v. Thorpe, 209 Mass. 570, 95 N. E. 955; Brautigam v. Dean, 85 N. J. Law, 549, 89 Atl. 760; Streator Independent Tel. Co. v. Continental Tel. Construction Co., 217 Ill. 577, 75 N. E. 546; Stanton v. New York, etc., R. R. Co., 59 Conn. 272, 22 Atl. 300, 21 Am. St. Rep. 110; Girard v. Case Bros. Cutlery Co., 225 Pa. 327, 74 Atl. 201; Machen on Corporations, vol. 1, § 329; 14 C. J. 257.

But the fundamental question which the present suit presents is not whether the defendant after its incorporation adopted an agreement previously made between its promoters, Andrews and Du Pont, as embodied in the letter of August 9, 1912. There is nothing in the record to show that the defendant corporation ever took action upon that particular agreement, or that it was ever brought directly to its attention. The contract which the defendant made with Du Pont, growing out of his offer and its acceptance, immediately after its incorporation on April 24, 1913, is the one contract which the defendant made upon which the plaintiff can rely. However, in determining the liability of the defendant under that contract, it will be necessary, as we shall presently see, to consider the meaning of the agreement made between Andrews and Du Pont in the letter of August 9, 1912, to which reference has already been made, and which we shall more particularly consider in a subsequent portion of this opinion.

[4] We now proceed to consider the contract the defendant made with Du Pont. It appears from the facts stipulated that the defendant was organized as a corporation on April 24, 1913, with Du Pont as one of the incorporators and directors. On the same day that the company was organized Du Pont submitted to it an offer which embraced 12 distinct propositions of things that he would cause to be done on its behalf by the Equitable Life Assurance Society of the United States and by other parties therein named. And in submitting this offer of the things he would cause to be done he stated that it was "in consideration and on condition that" it (the defendant) agreed that it would do certain things set forth in 11 paragraphs, of which paragraph 10 alone can have any possible relation to the matter now under consideration. By that paragraph the defendant was to—

"assume and discharge and reimburse me [Du Pont] for all my expenses in connection with: (1) Negotiating for and securing the delivery of the various instruments and agreements hereinabove mentioned; and (2) in connection with work done and materials supplied for construction of said building in anticipation of the arrangements about to be made; and (3) all other ex-

penses of every kind either incurred or which may be incurred by me in bringing about such arrangements, including the incorporation of your company and the preparation of instruments for use in perfecting such arrangements."

Neither in the things which Du Pont was to do nor in the things which the defendant was to do, if the offer was accepted, was there any express mention of Gardiner. The offer was accepted by the board of directors unanimously, Du Pont not voting. The vote directed that the officers of the company should execute and deliver all agreements and other instruments in writing and other things necessary and proper to carry out and consummate the transaction according to the terms of the offer.

If paragraph 10 simply imposes upon the defendant an obligation to assume and discharge and reimburse Du Pont for all of his expenses, either incurred or which may be incurred by him in doing certain things, and for which he had become or should become personally liable, then this suit cannot be maintained; for the commission sought to be recovered in this suit is not an expense incurred by Du Pont for which he became personally liable, this court having already so decided in the former case. And by stipulation of the parties it is agreed that Gardiner never rendered any service to Du Pont, and the latter never incurred any obligations to him, unless one was created by the letter of August 9, 1912. If that is the meaning which must be given to the agreement between the defendant and Du Pont, then Du Pont failed in his offer to the defendant to incorporate and provide for the claim of Gardiner, and has broken his promise to Andrews that he would see that the corporation paid it.

This action then must fail, unless the words "expenses * * * incurred * * * by me," as employed in the agreement made between the promoter, Du Pont, and the defendant corporation, are entitled to receive a broader construction than that already considered. To maintain the action it is necessary that the words quoted should be sufficiently comprehensive to include expenses incurred by Andrews as the original promoter, but which Du Pont, in taking over the enterprise from Andrews, agreed should be paid to Gardiner by the corporation which Du Pont was to organize. We must, so far as this record is concerned, regard this commission of Gardiner's as an "expense" of the enterprise. Whether the original undertaking between Andrews and Gardiner was, at the time the services were rendered, that they were to be paid for by Andrews, or whether Gardiner was to look to the corporation when it was organized, is not disclosed upon the record, and is immaterial so far as the issue now under consideration is concerned.

The important question is whether the agreement made by Du Pont with Andrews that this commission to Gardiner for services rendered in connection with the promotion of the enterprise should be paid by the corporation he was to form can be regarded as an expense connected with the enterprise which Du Pont can be said to have incurred by this recognition of it. If it can be so regarded, the defendant corporation has agreed to pay it, and this action can be maintained. If it

273 F.—29

cannot be so regarded, the defendant has not promised to pay it, and the action cannot be maintained. The fact that Du Pont did not obligate himself personally to pay this expense does not preclude it from being regarded as an expense of the enterprise incurred by him. It is not at all unusual in the case of promoters' contracts for A. to incur expense with the understanding that B. is to look for payment to C. And it does not seem to us a strained or improper construction of the agreement to hold that, when Du Pont found it necessary or desirable, in taking over the enterprise, to promise that Gardiner's commission should be paid by the corporation, he thereby made or recognized its payment as an expense of the enterprise which he had incurred by virtue of the letter of August 9, 1913. Therefore the defendant, by its acceptance of Du Pont's offer on April 24, 1913, to pay the expenses incurred by him, became liable to pay the Gardiner commission as Du Pont promised.

We are dealing with a promoter's contract, and the actual intention of the parties should be given effect as in the case of other contracts. We must assume that Andrews, in turning over to Du Pont the enterprise which he was promoting, was influenced by Du Pont's promise. that Gardiner's commission should be paid. We cannot assume that Andrews would have turned. the enterprise over, unless Du Pont incurred an expense incidental to the prosecution of the enterprise, the payment of which expense was to be contingent upon the action of the corporation to be formed. That corporation was in effect Du Pont. He was to incorporate it, and to name its board of directors, and would presumably control its policy. Good faith seems to require the construction we have placed upon the words the parties used. The question as to any false or fraudulent representations having been made to Du Pont by Andrews by which he was induced to agree that Gardiner should be paid is not before us upon this record.' The allegations in the answer upon that subject did not influence the court below in arriving at its conclusion. The learned District Judge expressly disclaimed any knowledge whatever as to whether any such false or fraudulent representations were in fact made. His language on this phase of the matter was as follows:

"In all that I·have stated I want it distinctly understood that I know nothing, nor do I want this record to indicate that Mr. Andrews made any false representation, knowing it to be false, or anything of the kind."

That court did not know, and this court does not know, anything of the kind. At this stage of the case, and upon this record, that question is not in any way before us. If any such representation was made, that was a matter of defense, and· had nothing whatever to do with the sufficiency of the complaint, nor of the facts upon which the plaintiff relies. That was the only question before the lower court,· and it is the only question before this court. The court was asked to dismiss the complaint, and the court had intimated that, if the plaintiff went to trial and proved certain. facts, he should feel compelled to dismiss the complaint. Thereupon certain facts were stipulated by counsel on both sides as constituting the fundamental facts which would be

proven by the plaintiff, if the case should go to trial. So that upon the complaint, supplemented by the stipulated facts which the plaintiff could prove, the complaint was dismissed. The sole difference between the lower court and this court grows out of the meaning to be attached to the words "expense incurred by me" in the acceptance by the defendant of Du Pont's offer. The agreement of the defendant that it would pay the debts of the enterprise which Du Pont had incurred was in the most general and comprehensive terms. It was that the defendant would pay "all other expenses of every kind either incurred or which may be incurred" by Du Pont in bringing about "such arrangements." Such arrangements, as we understand them in the connection in which they are used, relate to the consummation of the enterprise he had undertaken.

[5] Upon the pleadings and the facts as stipulated, it was error therefore for the court to dismiss the complaint as respects the first cause of action. The agreement made between the defendant and Du Pont on April 24, 1913, bound the former to pay the Gardiner commission as an expense connected with the enterprise which Du Pont had incurred; and under the law as laid down in this circuit it stated a cause of action in equity. Goodyear Shoe Machinery Co. of Portland v. Dancel, 119 Fed. 692, 56 C. C. A. 300; Id., 144 Fed. 679, 75 C. C. A. 481.

The decree is reversed, and the cause remanded to the District Court, with directions to reinstate so much of the complaint as relates to the first cause of action, and to further proceed as may be required and as shall be in conformity with this opinion.

HOUGH, Circuit Judge (dissenting). "Expense" is a word that always implies disbursement or liability on the part of the expense incurrer. If, as this court has heretofore held, Du Pont incurred no personal liability to Gardiner, and if, as we now hold with obvious truth, Gardiner never rendered any services to either Du Pont or the defendant company, it is impossible for me to perceive how Gardiner's claim can be regarded as an "expense incurred" by any one, except perhaps Andrews.

The material facts have long been patent in the record of Du Pont v. Gardiner, supra; that evidence has never been varied in any essential; the subsequent proceedings are but a game of legal hide and seek. Du Pont promised to make an intended corporation pay Gardiner; he was induced so to do by what he regarded as false representations, and so did not keep his promise. After he became (rightly or wrongly) convinced of Andrews' falsity, of course he never intended to keep that promise.

It is now held that Du Pont smuggled into his long subsequent agreement with this defendant corporation a contract to pay as an "expense" something he was not liable for, and for which he thought it morally impossible any one could be made to respond. From this proposition I dissent.