*128 OPINION.
McMahon:
The principal question here presented relates to the proper basis to be used in computing the depreciation deductions to which the petitioner is entitled in the year 1925 upon the depreciable assets of the Perfex Radiator Company. The respondent has held that the proper basis is the price at which such assets were sold at the receiver’s sale on April 21, 1923. The petitioner contends that when Alexander bid the properties in at the receiver’s sale he was acting on behalf of MacLeod Young, the American Brass Company and the National Lead Company, that those parties in interest later transferred such assets to petitioner in exchange for stock and other securities, and that the proper basis for the computation of depreciation deductions is the value of such assets at the time petitioner actually acquired them, which value petitioner contends was in excess of the price at which they were sold at the receiver’s sale. Petitioner arrives at this conclusion by reasoning that the cost of the assets to the petitioner was the value of the stock and securities issued therefor by the petitioner, which in turn is governed by the actual value of the assets.
The respondent held that the assets in question were purchased by the petitioner directly from the receiver. From a consideration of all the evidence we conclude that the petitioner has not overcome the presumption in favor of the respondent’s determination in this respect. On the contrary, there is persuasive evidence which tends to support the respondent’s determination. The property was bid in by Alexander, who, in a written declaration to the receiver designated the petitioner as the party to receive the property, and stated that the bid made by him was for and on behalf of the petitioner. In an agreement entered into between the receiver and the petitioner it was stated that the highest bid received at the sale was from Alexander, for and on behalf of the petitioner. In the minutes of *129 the meeting of the subscribers to the capital stock of petitioner held on April 26,1923, it was stated that “ this corporation was organized primarily for the purpose of acquiring from Willis E. Keats, receiver appointed in the United States District Court for the Eastern District of Wisconsin, the property and assets of the Perfex Radiator Company.” A reading of the escrow agreement discloses that the formation of a corporation was contemplated by the parties and it was therein provided that title to the assets should be transferred directly to the corporation, but that, in the event Young and Mac-Leod should fail to arrange to have title transferred direct to the corporation, then title should go to the Manufacturers National Bank of Racine, Wisconsin, the escrow agent, and should then be transferred to either the corporation or the American Brass Company and the National Lead Company, in which event MacLeod and Young were to be paid $35,200, or $4,800 less than the amount they had advanced. Nowhere in the escrow agreement was there any provision for the vesting of title to the assets in Young or MacLeod. Furthermore, title to the property in question did pass directly from the receiver to this petitioner. The fact that the remainder of $5,500 of the escrow funds unused in the purchase of the assets was transferred to the petitioner indicates that such funds were placed in escrow for the use of the corporation and were, in fact, advances to it. The fact that the petitioner was not in existence on April 21, 1923, at the time Alexander bid upon the property, is not inconsistent with this view, since the petitioner, in an agreement with the receiver dated April 26, 1923, ratified the action of Alexander in acting on its behalf at this sale.
The rule is well established that a contract made in behalf of a corporation before it is formed becomes the contract of the corporation so that it is both entitled to the benefit thereof and is liable thereon if it expressly or impliedly ratifies or adopts the same after it comes into existence, provided the contract is within its charter or corporate powers. In re Quality Shoe Shop, Inc., 212 Fed. 321; Hinkley v. Sagemiller, 210 N.W. (Wis.) 839, 841; Myers, Inc. v. Ogden Shoe Co., 181 N. W. (Wis.) 307; Pratt v. Oshkosh Match Co., 89 Wis. 406; 72 N. W. 84; cases cited in note 48, I Fletcher Cyc., Corporations, p. 211; and in note 63, 14 C. J. 257. See Carel Robinson, 19 B. T. A. 751. See also Whitney v. Wyman, 101 U. S. 392, wherein the Supreme Court stated in part:
But it is said the corporation at the date of these letters was forbidden to do any business, not having then filed its articles of association, as required by the statute.
To this objection there are several answers.
The corporation subsequently ratified the contract by recognizing and treating it as valid.
*130 This made it in all respects what it would have been if the requisite corporate power had existed when it was entered into. * * *
Cf. Petree v. United States, 34 Fed. (2d) 568; affd., 41 Fed. (2d) 517; certiorari denied, 282 U. S. 877.
Under the evidence it does not appear that the respondent erred in holding that the petitioner purchased the assets in question from the receiver as of April 21, 1923. It follows that the determination of the respondent, that the cost of such assets at such receiver’s sale is the basis for the determination of depreciation deductions thereon, must be approved. See section 204 (a) and (c) of the Revenue Act of 1926, which is set forth in part in the margin.[1]
Furthermore, even if petitioner were correct in its contention that it purchased the assets from the American Brass Company, National Lead Company, Young and MacLeod and that the cost of the assets to the petitioner is to be determined by the value of the assets themselves at the time acquired, the respondent’s basis for computation of depreciation deductions would still prevail.
By the provisions of section 907 (a) of the Revenue Act of 1926, as amended by section 601 of the Revenue Act of 1928, the Board is bound by the rules of evidence prevailing in the courts of equity in the District of Columbia. In Ruppert v. McArdle, 42 App. D. C. 392, the court was called upon to determine the value of certain property at the date of the termination of a life tenancy. An appraisal had been made of the property subsequent to the termination of such tenancy and thereafter the executor had sold such property under court order. The court held that the appraisement was merely prima facie evidence of the value of the property, and that the subsequent judicial sale, which was a fair sale, was better evidence of the value of the property at the date in question. Here, appraisers appointed by the court valued the assets in question as of February 9, 1923, and the valuation placed thereon by them was greatly in excess of the price at which such assets were subsequently sold on April 21, 1923, at the receiver’s sale. Obviously the appraiser’s report fixing the value of the property in question herein at $351,504 was before the court, and notwithstanding the appraised value the receiver informed the court that such property was worth $175,000, and the court set the latter figure as the minimum selling price. A receiver’s sale was attempted, but no bids were received, *131 and thereupon the court postponed the sale and fixed no minimum price for the property. Thereafter the receiver’s sale was consummated on April 21,1923, and, it being a fair judicial sale, we conclude that the value established by that sale should be taken as the value of the property on that date and also on April 26, 1923, the date it was actually transferred to petitioner by the receiver. In the instant proceeding, one of the appraiser’s testified at the hearing that the appraisal made represented the best judgment of the appraisers as to the fair market value of the property on February 9, 1923. In the absence of such showing this would be assumed, and this proof adds little, if anything. In Ruppert v. MoArdle, supra, there is no indication that any of the appraisers did testify before the court, but we deem this difference between the two cases insufficient to justify a different result. Under these circumstances, we can not disturb the value of the assets as determined by the respondent as of the date they were acquired by the petitioner, which is the price at which they were sold at the judicial sale on April 21, 1923. See also Hazelton v. Le Duc, 10 App. D. C. 379; and Andrews v. Commissioner, 38 Fed. (2d) 55; affirming Estate of Effie Andrews. 13 B. T. A. 651; and cf. Belridge Oil Co., 26 B. T. A. 810.
There is no proof in the record sufficient to overcome the presumption in favor of the correctness of the respondent’s determination as to value based on the judicial sale of April 21, 1923.
The contention of the petitioner that it should be allowed, as a deduction from gross income of the year 1925, the amount of a net loss in 1924 also fails, since at the hearing it was stipulated between the parties that if the Board should approve the depreciation basis as determined by the respondent, then the petitioner sustained no net loss in 1924.
Reviewed by the Board.

Judgment will be entered for the respondent.

GoodRICh concurs in the result.

 Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition, of property acquired after February 28, 1913, shall he the cost of such property ; except that [exceptions immaterial]' — ■
****** *
(c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that — [exceptions immaterial].